The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Thomas Eugene PAYSENO,
Defendant–Appellant.

No. 96CA1611.

Colorado Court of Appeals,
Div. III.

Oct. 16, 1997.

Rehearing Denied Nov. 13, 1997.

Certiorari Denied May 11, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Fuerst, III, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

James McDonough, P.C., James McDonough, Englewood, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Thomas Eugene Payseno, appeals the trial court's denial of his Crim. P. 35(c) motion, in which he requested that the court change the date of his parole eligibility to reflect credit for presentence confinement or, in the alternative, permit him to withdraw his guilty plea to first degree murder. We affirm.

Defendant pleaded guilty pursuant to a plea agreement, and the trial court sentenced him to life imprisonment. The court later entered a judgment of conviction that indicated the life sentence, together with credit for presentence confinement.

The Department of Corrections (DOC) initially set defendant's parole eligibility date to reflect credit for the presentence confinement. However, five years later, after the decision in *Derrick v. Colorado Board of Parole,* 747 P.2d 696 (Colo.App.1987), DOC extended defendant's parole eligibility date in order to remove the credit. The division in *Derrick* had concluded that §§ 17–22.5–104(2)(a) and 16–11–306, C.R.S.1997, did not require that the date of parole eligibility reflect credit for presentence confinement for a defendant sentenced to life imprisonment for first degree murder.

Defendant then filed a Crim. P. 35(c) motion. In the motion, and at a hearing on the motion, defendant argued that: 1) the trial court erred in interpreting §§ 17–22.5–104(2)(b), C.R.S.1997, and 16–11–306 to exclude credit for presentence confinement; 2) regardless of the proper statutory interpretation, specific performance of his plea agreement required that he receive credit for presentence confinement or, in the alternative, that he be permitted to withdraw his guilty plea; and 3) applying the two statutes to his sentence as they were construed in later judicial decisions was the equivalent of adopting an *ex post facto* law and thus violated his right to due process.

After a hearing, the trial court determined that defendant was not statutorily entitled to an earlier date of parole eligibility to reflect credit for presentence confinement, his plea agreement had not been violated, and he was not entitled to withdraw his guilty plea. Although the court did not separately address his *ex post facto* argument, it denied the motion.

I.

Defendant first asserts the trial court erred in concluding he was not entitled to an earlier parole eligibility date to reflect credit for presentence confinement. We disagree.

Defendant's sentence was subject to § 17–22.5–104(2)(b):

No inmate imprisoned under a life sentence for a crime committed on or after July 1, 1977, but before July 1, 1985, shall be paroled until such inmate has served at least twenty calendar years, and no application for parole shall be made or considered during such period of twenty years.

The trial court initially granted defendant credit for presentence confinement pursuant to § 16–11–306, C.R.S.1997, which reads in pertinent part:

A person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his sentence for the entire period of such confinement.... Such period of confinement shall be deducted from the sentence by the department of corrections.

Defendant argues the trial court's initial interpretation of the statutes was correct because, when read together, they require that the date of parole eligibility for *any* prison sentence, including one for first de-

gree murder, must reflect credit for presentence confinement. However, aside from the fact that the statute refers to a reduction in the term of the sentence rather than the date of parole eligibility, defendant's argument is in direct conflict with decisions by other divisions of this court in *Derrick v. Colorado Board of Parole, supra,* and *People v. Goodwin,* 768 P.2d 715 (Colo.App.1988). Although both divisions were construing the provision now codified at § 17–22.5–104(2)(a), C.R.S. 1997, their reference to "calendar years" is the same wording defendant relies on in this case to challenge the trial court's construction of § 17–22.5–104(2)(b).

█ The General Assembly is presumed to be aware of judicial construction of our statutes. When it reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agreed with the judicial construction of the statute. *See Tompkins v. DeLeon,* 197 Colo. 569, 595 P.2d 242 (1979); *see also People v. Cooke,* 150 Colo. 52, 370 P.2d 896 (1962).

Both § 17–22.5–104(2)(a) and § 17–22.5–104(2)(b) were amended in 1993 as to a subject not relevant here, and no change was made to the wording in question. *See* Colo. Sess. Laws 1993, ch. 322, §§ 17–22.5–104–(2)(a) and 17–22.5–104(2)(b) at 1977. Further, the *Derrick* interpretation of the two statutes, which are regularly applied in our courts in similar circumstances, has stood as this court's statutory construction for the past decade. In these circumstances, we are not persuaded it would be appropriate for this court to apply a different statutory construction. Any change must instead come from the supreme court or the General Assembly.

We therefore find no error in the trial court's refusal to require that defendant receive credit for his presentence confinement.

## II.

█ Defendant next contends that, aside from statutory construction, the trial court erred in not construing and specifically enforcing his plea agreement to require that he be given credit for his presentence confine-

ment or, in the alternative, in not permitting him to withdraw his guilty plea. We again disagree.

█ A plea agreement is a contract, the terms of which are interpreted in light of the reasonable expectations of the parties. *See People v. Romero,* 745 P.2d 1003 (Colo.1987); *People v. Mershon,* 844 P.2d 1240 (Colo.App. 1992). Hence, a court's task is to construe the agreement in a manner consistent with the expressed intent of the parties and extrinsic evidence relating to the circumstances surrounding the making of the agreement, resulting in a construction that is consistent with the defendant's due process right to be treated fairly by the government. *See People v. Romero, supra.*

Defendant maintains that he is entitled to specific performance of the terms of the plea agreement, which in this case should include a date of parole eligibility that reflects credit for his presentence confinement. However, the People deny making any such promise, and we have found no evidence suggesting that the date of defendant's parole eligibility was a term of the agreement. No mention was made of crediting presentence confinement against the date of parole eligibility at the providency hearing and defendant's counsel had no recollection of discussing the matter with the prosecutor.

Defendant on appeal argues that credit for presentence confinement was at least an implied term of his plea agreement because everyone involved, defendant, his counsel, the prosecutor, and the trial court, believed the credit was required by statute, and his counsel expressly so advised him. However, no such argument was presented to the trial court.

Moreover, because any expectation defendant may have had, however reasonable, was not included in the plea agreement or in any promise by the prosecutor or trial court, it cannot be construed as an additional term of the unambiguous agreement, express or implied. Nor was it converted into a term of the agreement merely because defense counsel expressly shared with defendant his belief concerning the date of parole eligibility. *See People v. Wilbur,* 890 P.2d 113 (Colo.1995);

*People v. Lustgarden,* 914 P.2d 488 (Colo.App.1995)(because only mention made to defendant about entitlement to parole was by defense counsel, he was not entitled to mandatory parole as part of plea agreement); *see also Cunningham v. Diesslin,* 92 F.3d 1054 (10th Cir.1996)(that all of the parties may have understood the defendant was eligible for mandatory parole under the applicable Colorado statute did not make that understanding a part of the plea agreement); *Lustgarden v. Gunter,* 966 F.2d 552 (10th Cir.1992)(any promise by the defendant's attorney about his right to parole did not bind the government as part of the plea agreement).

The alternative "relief" defendant requests, to be permitted to withdraw his guilty plea, is relief available for a different due process violation, the entry of a guilty plea that was not knowing and voluntary. Defendant has not expressly raised such an argument at trial or on appeal. Further, to the extent the intent was to do so, because it would appear to be based on the same factors already discussed, we must reject the contention for the reasons already stated. *See People v. Wilbur, supra; People v. Lustgarden, supra; see also Cunningham v. Diesslin, supra.*

### III.

■ Defendant's last contention is that the trial court erred in not addressing his argument that application of the *Derrick* construction of §§ 17–22.5–104(2)(b) and 16–11–306 to a sentence imposed five years earlier violates his right to due process, which makes the constitutional prohibition against *ex post facto* laws applicable to the judicial branch. We agree the trial court did not address the argument. Nevertheless, we are not persuaded that recalculation of the date for defendant's parole eligibility pursuant to *Derrick* violated his right to due process.

■ The prohibitions against *ex post facto* laws are limitations on the power of the legislature and are not applicable to the judicial branch. *See Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Indeed, "[j]udicial decisions normally are applied retrospectively, that is, 'they apply to conduct that occurred before the decision.'" *See Aue v. Diesslin,* 798 P.2d 436, 438 (Colo. 1990). The right to due process is implicated by judicial decisions affecting parole only in the rare cases when a retrospective application was unforeseeable and has the effect of inflicting a greater punishment. *See Aue v. Diesslin, supra; People v. Grenemyer,* 827 P.2d 603 (Colo.App.1992).

In support of his argument that *Derrick* was unforeseeable, defendant relies on DOC's continuous interpretation of §§ 17–22.5–104(2)(b) and 16–11–306 before, at the time of, and after his plea. Pursuant to that interpretation, the parole board's policy was to include credit for presentence confinement in calculating the date of parole eligibility, even for prisoners serving a life sentence for first degree murder.

However, *Derrick* was a case of first impression. No prior appellate decision had applied the two statutes to a sentence for first degree murder.

The defendant in *Aue v. Diesslin, supra,* similarly asserted that the parole board's "long-standing" construction of applicable statutes led him to believe that he was eligible for mandatory parole. He argued that application of a later supreme court decision to make him eligible only for discretionary parole did not give fair warning and thus violated his right to due process.

In rejecting the defendant's argument, the supreme court in *Aue* distinguished a parole board's interpretation of a statute from its exercise of any power to legislate in such matters. It further distinguished an "expectation" based on a parole board's interpretation from one based on a final decision by an appellate court. Its analysis included this quote from *Lerner v. Gill,* 751 F.2d 450, 459 (1st Cir.1985), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985):

It is a fact of life, unlikely soon to be altered, that new laws are often not challenged and finally interpreted until a number of years go by.... We would be most reluctant to hold that the due process clause of the Constitution took away [a state's] power to consider and apply its laws correctly in this situation. Only in

rare circumstances have courts allowed the misconstructions of officials to stop the proper execution of state or federal law, and such cases have involved prejudice and harm *beyond frustrated expectations.*

*Aue v. Diesslin,* supra, 798 P.2d at 439–40 (emphasis added).

We recognize that defendant's expectations may well have been frustrated. The supreme court has nevertheless made clear that a defendant's right to due process is not violated merely because the parole board has interpreted a statute contrary to a later final decision by an appellate court.

Likewise, §§ 17–22.5–104(2)(b) and 16–11–306 may reasonably be subject to differing interpretations when applied to a prisoner serving a life sentence for first degree murder. Nevertheless, the statutory construction provided in *Derrick* and *Goodwin* was not so novel that we can say it was unforeseeable.

We therefore find no constitutional violation in the application to defendant's sentence of §§ 17–22.5–104(2) and § 16–11–306, as construed in *Derrick* and *Goodwin,* notwithstanding the parole board's earlier interpretation to the contrary. *See Aue v. Diesslin,* supra; see also Lustgarden v. Gunter, *supra.*

Because of our conclusion, we do not address the issue of whether defendant's punishment was enhanced in a constitutional sense by application of the *Derrick* statutory construction to his sentence.

Judgment affirmed.

HUME and JONES, JJ., concur.