In re Paul FIELDS, Jr., Petitioner,

v.

John SUTHERS, Executive Director, Colorado Department of Corrections, Respondent.

No. 98SA168.

Supreme Court of Colorado, En Banc.

June 28, 1999.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Ty Gee, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Deputy Attorney General, Paul S. Sanzo, First Assistant Attorney General Civil Litigation Section, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

The petitioner, Paul Fields, Jr., appeals from the denial of his petition for a writ of habeas corpus in the Bent County District Court. Fields was convicted of first-degree murder in 1982 and sentenced to life imprisonment. His petition alleges that, in calculating his parole eligibility date, the Colorado Department of Corrections (DOC) illegally refuses to credit him with the 329 days that he spent in presentence confinement.[1] The district court denied the petition as premature because, even accepting Fields's argument as correct, the date that Fields claims should be his parole eligibility date is still more than a year in the future.

We agree that habeas corpus is not an appropriate remedy at this time. However, in the interests of justice and of judicial economy, we elect to treat this appeal as an original proceeding under C.A.R. 21 in the nature of mandamus. Reaching the merits of Fields's claim, we conclude that the DOC must credit Fields with his 329 days of presentence confinement in calculating his parole eligibility date.

## I. FACTS AND PROCEEDINGS BELOW

The relevant facts are not in dispute. On March 19, 1981, Fields was arrested for first-degree murder and incarcerated. He remained continuously incarcerated until February 11, 1982, when he was convicted in Arapahoe County District Court of one count of first-degree murder[2] and two counts of criminal attempt to commit first-degree murder.[3] That same day, the trial court sentenced Fields to life imprisonment on the first-degree murder count,[4] and he was remanded to the custody of the DOC.

The mittimus for this case reflects that Fields was incarcerated for 329 days from the date of his arrest until the date of sentencing. Fields's petition asserts that the DOC initially took his presentence confinement into account and calculated his parole eligibility date as March 19, 2001, which is twenty calendar years from the date of his arrest. The DOC subsequently recalculated Fields's parole eligibility date as February 11, 2002, twenty calendar years from the date of his sentencing. Thus, Fields's current parole eligibility date does not take into account the 329 days that he spent in presentence confinement.

Fields has attempted to seek redress from the courts for the DOC's refusal to grant him credit for the period of his presentence confinement on several occasions. First, he filed a pro se motion for reduction of sentence under Crim. P. 35(b) in the Arapahoe County District Court with the same judge who had originally sentenced him. In December 1996, without holding a hearing, the district court denied this motion, ruling that Rule 35 was not the proper vehicle for Fields to attack the calculation of his parole eligibility date. However, the court's order denying the motion suggested that the substance of Fields's claim potentially had merit:

If the Department of Corrections has, as [Fields] alleges, computed his initial parole

---

1. While the actual respondent named in the petition is the Executive Director of the DOC, for our purposes we treat the director and the DOC as interchangeable. Moreover, we note that while this case has been pending with this court, by operation of law, John Suthers, the new Executive Director of the DOC, has been substituted as the respondent in this case in place of the former director, Aristedes Zavaras. *See Rather v. Suthers*, 973 P.2d 1264, 1265 n. 1.

2. *See* § 18–3–102, 8 C.R.S. (1978 & 1981 Supp.).

3. *See* § 18–2–101, 8 C.R.S. (1978).

4. The trial court also sentenced Fields to twelve years plus one year of parole for each count of attempted first-degree murder, to run concurrently with each other and with Fields's life sentence.

eligibility without reference to his presentence credit, then the Department is imposing a sentence which violated the statutes of this state and the sentence ordered by this Court.

The court's order further suggested that Fields's claim would be reviewable under habeas corpus.

Fields then filed a pro se petition for a writ of habeas corpus in the Arapahoe County District Court. In February 1997, the same district court judge denied this petition on the ground that Fields was not entitled to immediate relief because the date he claimed he should become eligible for parole was more than four years in the future.

Fields then filed a pro se petition for a writ of mandamus in the Arapahoe County District Court. In September 1997, a different district court judge denied the petition for mandamus, ruling that the determination of Fields's parole eligibility date was completely within the discretion of the DOC.

Two months later, although still not represented by counsel, a lawyer reviewing the order denying Fields's Rule 35 motion advised Fields that Bent County was the proper venue for the habeas corpus action suggested by the Arapahoe County District Court. Continuing to act pro se, Fields filed a petition for a writ of habeas corpus in the Bent County District Court, the denial of which is the subject of this appeal.

The Bent County District Court did not reach the merits of Fields's claim that the DOC denied him his statutory entitlement to 329 days of presentence confinement credit. The district court held, on its own motion, that Fields's petition was premature because, even under Fields's analysis, he would not be entitled to consideration for parole until 2001 at the earliest. Thus, like the Arapahoe County District Court, the Bent County District Court concluded that the remedy of habeas corpus was unavailable because Fields's claim was premature. This appeal followed.[5]

**II. PROCEDURAL POSTURE AND THE UNAVAILABILITY OF HABEAS CORPUS RELIEF**

We begin by addressing the procedural aspects of this case. The DOC claims that the district court correctly denied Fields's petition on the basis that Fields's claim was premature because he was not entitled to immediate relief. Fields argues that the writ of habeas corpus is broad enough to encompass the relief he seeks. Based on our case law interpreting the writ, we agree with the district court's conclusion that the petition was premature. However, we exercise our discretion to treat this case as an original proceeding in the nature of mandamus and to reach the merits of Fields's claim.

**A.**

The writ of habeas corpus is designed primarily to determine whether a person is being detained unlawfully and therefore should be immediately released from custody. See *Jones v. Zavaras*, 926 P.2d 579, 581 (Colo.1996). A petition for a writ of habeas corpus may only be dismissed without a hearing if the petition fails to establish a prima facie case either (1) that the petitioner is illegally confined and is entitled to immediate release; or (2) that the petitioner is suffering a serious infringement of a fundamental right. See *Christensen v. People*, 869 P.2d 1256, 1259 (Colo.1994); *White v. People*, 866 P.2d 1371, 1373 (Colo.1994); *Kodama v. Johnson*, 786 P.2d 417, 419 (Colo.1990). Habeas corpus relief may be available in some cases where complete discharge from custody will not result. See *Naranjo v. Johnson*, 770 P.2d 784, 786 (Colo.1989); *Marshall v. Kort*, 690 P.2d 219, 222 (Colo.1984). "However, the relief requested, if granted, must have some practical effect on the restraint of the prisoner *at the time of the hearing*." *Kodama*, 786 P.2d at 419 (emphasis added).

In *Naranjo*, this court held that habeas corpus was available as a remedy to adjudicate a prisoner's claim that he was being illegally denied consideration for discretionary parole. See *Naranjo*, 770 P.2d at 787–

---

5. Fields does not dispute the DOC's assertion that he did not appeal the previous denials of his Rule 35 motion and his petitions for writs of habeas corpus and mandamus.

88.[6] However, there is a crucial fact that distinguishes *Naranjo* from the case before us. The prisoner in *Naranjo* asserted that he was eligible for parole consideration immediately. *See id.* at 786–87. Fields makes no such assertion here. Even assuming the facts alleged in Fields's petition to be true, his parole eligibility date is not until March 2001. Under these circumstances, we agree with the district court's analysis that Fields's petition for habeas corpus is premature, because the relief that Fields requests would not "have some practical effect on restraint of the prisoner *at the time of the hearing.*" *Kodama,* 786 P.2d at 419 (emphasis added).[7] Therefore, we hold that the district court correctly dismissed Fields's habeas corpus petition.[8]

## B.

▉ As a technical procedural matter, this case comes to us for review of the Bent County District Court's denial of a petition for a writ in the nature of habeas corpus and not for review of the Arapahoe County District Court's denial of Fields's petition for a writ in the nature of mandamus. However, we find that a writ in the nature of mandamus is the proper remedy for Fields's contentions. *See Meredith v. Zavaras,* 954 P.2d 597, 598 (Colo.1998) (recognizing that this

court may issue a writ in the nature of mandamus to compel the DOC to comply with a district court order directing the DOC to grant a prisoner credit for time spent in presentence confinement). We have the authority to suspend the rules of appellate procedure in a particular case in the interest of expediting a decision or for other good cause shown. *See* C.A.R. 2; *People v. Young,* 814 P.2d 834, 838 (Colo.1991). The record here demonstrates that the multiple petitions filed by Fields were the result of a pro se litigant's attempts to navigate a complex and difficult legal terrain. At least some of the repeat filings undoubtedly resulted from one district court judge's suggestion to Fields that his claim had merit but that it should be recast as a petition for a writ in the nature of habeas corpus and an attorney's suggestion to Fields that he had not yet filed in the proper venue. Moreover, we ultimately agree that Fields's claim has merit, albeit in mandamus rather than habeas corpus. Under these circumstances, it would be an elevation of form over substance for us to deny this appeal solely because Fields's claim in habeas corpus is premature. Judicial economy and the interests of justice dictate that we reach the merits of Fields's claim concerning his entitlement to credit for 329 days of presentence confinement.

---

**6.** We do not read our recent opinion in *Rather v. Suthers,* 973 P.2d 1264, 1267 (Colo.1999), to suggest otherwise. In *Rather,* we stated that we could not grant the petitioner habeas corpus relief because at that time he was only eligible for discretionary parole and was not yet entitled to immediate release in the form of mandatory parole. However, in *Rather,* unlike here, we were reviewing the denial of a habeas corpus petition on its merits, and Rather was not merely seeking a parole hearing but instead was seeking to be released. *See Rather,* 973 P.2d at 1267.

**7.** We give Fields's pro se petition the benefit of the doubt by reading it broadly to include an allegation that a recalculation of his parole eligibility date may determine his assignments to work and educational opportunities within the DOC at the present time. Even so, such an allegation does not constitute an immediate practical effect on the restraint of Fields or on any of his fundamental rights.

**8.** Fields cites federal authority indicating that the federal writ of habeas corpus is broad enough to entitle him to a hearing on his claims at this time

(or at least after he has exhausted his state remedies). *See, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 487, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (holding that "recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases"); *Peyton v. Rowe,* 391 U.S. 54, 66–67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (rejecting prematurity doctrine and allowing a prisoner to bring a habeas corpus challenge to the second of two consecutive sentences while still serving the first); *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 808–09 (D.C.Cir.1988) (holding that federal prisoners challenging determination of their future parole eligibility date must bring their suit under habeas corpus theory). However, these cases interpret the federal habeas corpus statutes, *see* 28 U.S.C. §§ 2241, 2254 (1994 & Supp. II 1996), rather than the Colorado habeas corpus statutes, *see* §§ 13–45–101 to –121, 5 C.R.S. (1998), and they do not set out minimum constitutional limits for the writ. *See Rodriguez,* 411 U.S. at 487, 93 S.Ct. 1827; *Chatman–Bey,* 864 F.2d at 806–07. Therefore, these cases do not control our analysis here.

## III. FIELDS'S ENTITLEMENT TO CREDIT FOR PRESENTENCE CONFINEMENT

In order to obtain mandamus relief, Fields must satisfy a three-part test. *See Meredith,* 954 P.2d at 601. First, he "must have a clear right to the relief sought." *Id.* "Second, the DOC must have a clear duty to perform the act requested." *Id.* Third, Fields must not have any other available remedy. *See id.*

The central issue in this case is whether Colorado law requires the DOC to give Fields 329 days presentence confinement credit towards his parole eligibility date. The resolution of this case thus turns on the harmonization of the statute governing parole eligibility for prisoners serving life sentences with the statute setting forth a prisoner's entitlement to credit for presentence confinement.

When Fields was sentenced in 1982, the following statute applied to his eligibility for parole:

> (b) No inmate imprisoned under a life sentence for a crime committed on or after July 1, 1977, shall be paroled until he has served at least twenty calendar years, and no application for parole shall be made or considered during such period of twenty years.

§ 17–22.5–104(2)(b), 8 C.R.S. (1984 Supp.). Presentence confinement credit was governed by section 16–11–306, 8 C.R.S. (1981 Supp.), which provided:

> **16–11–306. Credit for presentence confinement.** A person who is confined prior to the imposition of sentence *is entitled to* credit against the term of his sentence for the entire period of such confinement. At the time of sentencing, the court shall make a finding of the amount of presentence confinement to which the offender is entitled and shall include such finding in the mittimus. *Such period of confinement shall be deducted from the sentence by the department of corrections.*

(Emphasis added.)

Fields asserts that section 16–11–306 requires that he receive 329 days credit towards the twenty calendar years he must serve before being eligible for parole. The DOC takes the position that the twenty calendar years for inmates serving life sentences does not begin to run until the date on which the inmate is actually sentenced to the DOC. Thus, the DOC claims that section 16–11–306 does not apply to inmates serving life sentences.

The DOC relies in part on two Colorado Court of Appeals cases, decided a decade apart, holding that the DOC is not required to take presentence confinement credit into account in calculating parole eligibility dates for inmates serving life sentences. *See Derrick v. Colorado Bd. of Parole,* 747 P.2d 696 (Colo.App.1987), *cert. dismissed,* (Colo. Dec. 8, 1987); *People v. Payseno,* 954 P.2d 631 (Colo.App.1997), *cert. denied,* (Colo. May 11, 1998).

In *Derrick,* the court of appeals was interpreting section 17–22.5–104(2)(a), C.R.S. (1986 Repl.Vol. 8A), which provided that "[n]o inmate imprisoned under a life sentence for a crime committed before July 1, 1977, shall be paroled until he has served at least ten calendar years, and no application for parole shall be made or considered during such period of ten years." *Derrick,* 747 P.2d at 697. *Derrick* held that subsection (2)(a)'s reference to "calendar years" indicated the General Assembly's intent "that the ten-year period not be reduced by any type of time credits," including presentence confinement credits. *Derrick,* 747 P.2d at 696.

In *Payseno,* the court of appeals relied heavily on *Derrick* to hold that section 17–22.5–104(2)(b) (one of the two subsections involved in this case) did not permit a credit for presentence confinement towards the twenty calendar years that an inmate sentenced to life imprisonment must serve before being eligible for parole. *See* 954 P.2d at 633. However, there is one critical difference between the facts in *Derrick* and *Payseno.* When the defendant in *Derrick* was sentenced in 1975, the presentence confinement credit statute relevant to this case, section 16–11–306, was not yet in effect. Unlike section 16–11–306, the predecessor statute then applicable did not mandate a day-for-day reduction in the sentence of imprisonment:

In sentencing a defendant to imprisonment the sentencing judge *shall take into consideration* that part of any presentence confinement which the defendant has undergone with respect to the transaction for which he is to be sentenced.

Chapter 44, § 39–11–306(1), 1972 Colo. Sess. Laws 249 (emphasis added). When the *Payseno* court concluded that *Derrick* was controlling authority, it failed to take account of this critical change in the presentence confinement credit statute. *See Payseno,* 954 P.2d at 632–33. For the following reasons, we conclude that *Payseno* was incorrectly decided, and we hold that section 16–11–306 requires the DOC to credit Fields with the 329 days he spent in presentence confinement when it calculates his parole eligibility date.

■ First, sections 17–22.5–104(2)(b) and 16–11–306 are not in conflict. The plain language of section 17–22.5–104(2)(b) does not prohibit a defendant from receiving credit for presentence confinement in calculating the twenty calendar year period; indeed, it makes no mention of presentence confinement. The presentence credit of section 16–11–306 is a day-for-day credit and is as much "calendar" time as is straight time served in the DOC. As we stated in *People v. Freeman,* 735 P.2d 879, 881, "Section 16–11–306 mandates that presentence confinement in a jail facility becomes part of the time served on the convicted person's sentence." Giving effect to the plain meanings of both section 17–22.5–104(2)(b) and section 16–11–306, Fields is therefore entitled to credit for the period of his presentence confinement against the twenty "calendar years" he must serve before being eligible for parole consideration.

Second, even if we were to find the term "calendar years" in section 17–22.5–104(2)(b) to be subject to alternative interpretations, the rule of lenity would persuade us to adopt the construction we do today. The rule of lenity "requires us to construe any ambiguities in a penal statute in a manner favoring the person whose liberty interests are affected by the statute." *Faulkner v. District Court,* 826 P.2d 1277, 1278–79 (Colo.1992) (holding that although the statutes governing good time credits were capable of alternative interpretations concerning their applicability to persons serving jail time as a condition of probation, such persons are eligible for good time credit).

Third, again assuming that section 17–22.5–104(2)(b) is ambiguous, we recognize our duty to construe statutes in a way that does not raise constitutional concerns. "[S]tatutory terms should be construed in a manner that avoids constitutional infirmities. Thus, if a statute is capable of alternative constructions, one of which is constitutional, then the constitutional interpretation must be adopted." *People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo.1994) (citations omitted). Here, the interpretation that the DOC urges us to follow raises equal protection concerns. Indigent defendants who are not able to post bail and who are subsequently sentenced to life imprisonment would be treated more harshly than defendants who have the financial resources to post bond.[9] *Cf. State v. Seeley,* 212 Wis.2d 75, 567 N.W.2d 897, 901 (Ct.App.) (indicating that an inmate's equal protection argument would have merit if financial considerations were the only considerations in denying inmate presentence incarceration credit for purposes of parole eligibility), *review denied,* 212 Wis.2d 689, 569 N.W.2d 590 (1997). It was precisely to prevent this unequal treatment of rich and poor that the General Assembly made presentence confinement credit mandatory rather than discretionary. *See Massey v. People,* 736 P.2d 19, 21 (Colo.1987) (stating that "[t]he purpose of section 16–11–306 is to eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, are confined longer than their wealthier counterparts").

We therefore hold that Fields is entitled to 329 days presentence confinement credit towards his parole eligibility date. We overrule *People v. Payseno,* 954 P.2d 631 (Colo. App.1997), to the extent it is inconsistent with our holding today.

---

9. The Arapahoe County District Court order denying Fields's Rule 35 motion states that Fields "had never been able to post ... bond." We construe this to mean that Fields was not able to post bond because he could not afford to post bond. The DOC has not argued otherwise and did not respond to Fields's equal protection arguments.

We briefly return to the three elements necessary for the issuance of a writ in the nature of mandamus. First, the DOC does not dispute the fact that Fields spent 329 days in presentence confinement. Based on our holding today, it is clear that Fields has a right to be credited with this time towards the calculation of his parole eligibility date. Second, it is also clear that the DOC has a duty to recalculate his parole eligibility date accordingly. The only remaining question is whether any other remedy is available to Fields. We have already determined that habeas corpus is not appropriate. *See* section II. A., *supra.* Nor can Fields obtain relief under Rule 35, since this case does not concern the legality of the sentences imposed by the Arapahoe County District Court. Thus, we find that no other remedy apart from mandamus is available to Fields. Hence, the issuance of a writ in the nature of mandamus is appropriate.

## IV. CONCLUSION

Exercising our original jurisdiction under C.A.R. 21, we make the rule absolute. We issue a writ in the nature of mandamus directing the DOC to recalculate Fields's parole eligibility date by crediting him with the 329 days that he spent in presentence confinement.

Justice SCOTT does not participate.