24CA0341 Lanari v CDOC 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0341
Crowley County District Court No. 22CV3
Honorable Samual S. Vigil, Judge
Honorable Deni E. Eiring, Magistrate

---

Robert Bradley Lanari,

Plaintiff-Appellant,

v.

Moses 'Andre' Stancil, Executive Director, Colorado Department of Corrections (CDOC); August Bauby, Manager, Time/Release Operations (CDOC); Michelle Brodeur, Clinical Services, Head (CDOC); Nicole Allen, MPS Coordinator, Programs Education (CDOC); Barry Goodrich, Warden, Crowley County Correctional Facility (CCCF); Eddie Tenorio, Case Manager (CCCF); and George Teneff, Case Manager (CCCF),

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Robert Bradley Lanari, Pro Se

Philip J. Weiser, Attorney General, Rebekah Ryan, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees Moses 'Andre' Stancil, August Bauby, Michelle Brodeur, and Nicole Allen

Hall & Evans, L.L.C., Andrew D. Ringel, Denver, Colorado, for Defendants-Appellees Barry Goodrich, Eddie Tenorio, and George Teneff

¶ 1	In this parole eligibility case, plaintiff, Robert Bradley Lanari, appeals an order dismissing under C.R.C.P. 12(b)(5) his complaint against defendants, the Colorado Department of Corrections through its Executive Director and other officials (collectively, DOC).[1]  Lanari contends that the district court erred by granting DOC's motion to dismiss because his complaint properly alleged that DOC (1) failed to apply all his earned time when calculating his parole eligibility date and (2) did not award him the "achievement earned time" to which he was entitled.  We disagree and affirm the judgment.

## I.	Background

¶ 2	In 1986, Lanari "shot and severely wounded his estranged wife . . . and killed his friend."  *Lanari v. People*, 827 P.2d 495, 497 (Colo. 1992).  A jury found Lanari guilty of first degree murder and attempted first degree murder, and the district court sentenced him to life in prison for the first degree murder conviction and a

---

[1] Lanari also sued the warden and several other officials of the private prison where he is incarcerated.  The district court dismissed these defendants earlier in the case, and Lanari does not challenge their dismissal on appeal.

consecutive twenty-four-year prison sentence for the attempted first degree murder conviction.

¶ 3     Lanari can become parole eligible for his life sentence for first degree murder after serving "forty calendar years." § 17-22.5-104(2)(c)(I), C.R.S. 2024.  Meanwhile, Lanari must serve 50% of his twenty-four-year sentence for attempted murder, "less any time authorized for earned time," before he will be eligible for parole for that crime.  § 17-22.5-403(1), C.R.S. 2024.

¶ 4     "Earned time" reduces the amount of time an inmate is required to serve on his sentence.  An inmate may earn up to ten days of earned time for each month of incarceration upon demonstrating consistent progress in various areas, such as work and training, group living, participation in counseling sessions, and other positive behavior.  § 17-22.5-405(1), C.R.S. 2024.  With some exceptions, earned time cannot reduce a person's sentence by more than 30% of the sentence's length.  § 17-22.5-405(4)(a).

¶ 5     DOC's most recent calculation of Lanari's parole eligibility is shown below:

| YEAR | MONTH | DAY | Comments/Explanation |
|---|---|---|---|
| 24 | 0 | 0 | 24 years on Count 2 |
| - 0 | | 291 | Minus 291 days PSCC from controlling sentence |
| = 23 | 2 | 9 | |
| - 0 | 0 | 291 | Minus 291 days good time on PSCC |
| = 22 | 4 | 18 | |
| / 2 11 | 2 | 9 | 50% reduction for Parole Eligibility length |
| + 40 | 0 | 0 | Add consecutive sentence of 40 years on Count I |
| = 51 | 2 | 9 | Time to serve to reach PED |
| + | | 63 | Plus 63 days Loss of Good Time (sanction from disciplinary) applied to count 2 |
| - 7 | 2 | 12 | Minus 30 days projected earned time (not yet earned) and 7 years 1 month and 12 days earned time awarded on Count 2. |
| + 1987 | 3 | 31 | Add Sentence Effective date of 3/31/1987 |
| = 2031 | 6 | 1 | Calculated PED |

Lanari's Calculated Parole Eligibility Date

¶ 6      The DOC technician who performed this calculation explained

that Lanari's life sentence "is not eligible for earned time credits."

And the technician clarified that, though "Lanari is eligible to

receive earned time on" his attempted murder sentence, "the

maximum sentence reduction is [30%] of the [twenty-four] years" for

"a total of seven years, one month, and [twelve] days of earned

time."[2]

---

[2] But 30% of twenty-four years is seven years, *two months*, and twelve days.  DOC's official time computation report reflects this correct cap on earned time, and DOC's parole eligibility calculations incorporate earned time up to this cap.

¶ 7 Lanari disagreed with DOC's parole eligibility date calculation and filed suit in district court for mandamus under C.R.C.P. 106(a)(2) and declaratory judgment under C.R.C.P. 57. DOC, in turn, moved to dismiss the case under C.R.C.P. 12(b)(5), arguing that Lanari was not entitled to his requested relief as a matter of law. The magistrate granted the motion, and the district court judge affirmed and adopted the magistrate's order.

## II. Standard of Review and Applicable Law

¶ 8 Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review. *In re Marriage of Thorburn*, 2022 COA 80, ¶ 25. We review de novo questions of law, including whether the magistrate properly interpreted a statute or applied the correct legal standard. *Id.*

¶ 9 We also review a C.R.C.P. 12(b)(5) motion de novo, applying the same standards as the district court. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011). We must "accept all allegations of material fact as true and view the allegations in the light most favorable to the plaintiff." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). "Dismissal is proper when the plaintiff's factual allegations cannot support a claim as a matter of

law." *Graham v. Maketa*, 227 P.3d 516, 518 (Colo. App. 2010); *see also Tomar Dev., Inc. v. Friend*, 2015 COA 73, ¶ 24 (approving dismissal of C.R.C.P. 57 declaratory judgment claims that fail as a matter of law).[3]

¶ 10    C.R.C.P. 106(a)(2) permits a person to petition a court for an order

> to compel a . . . governmental body . . . to perform an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such . . . governmental body.

¶ 11    Mandamus under C.R.C.P. 106(a)(2) is considered an extraordinary remedy used to compel the performance of a nondiscretionary ministerial duty.  *Jefferson Cnty. Educ. Ass'n v. Jefferson Cnty. Sch. Dist. R-1*, 2016 COA 10, ¶ 10.  C.R.C.P.

---

[3] "[I]n a declaratory judgment action in which the court rules against the position of the plaintiff, it should enter a declaratory judgment and not sustain a motion to dismiss." *Hobbs v. City of Salida*, 2024 COA 25, ¶ 17 (quoting *Karsh v. City & Cnty. of Denver*, 490 P.2d 936, 938 (Colo. 1971)) (*cert. granted* Sept. 30, 2024).  But "we need not decide whether the district court should have done so here, as the result of entering a declaratory judgment would have been the same as dismissal of the . . . claim." *Hess v. Hobart*, 2020 COA 139M2, ¶ 33 n.5.

5

106(a)(2) may be used to compel DOC's proper calculation of a parole eligibility date. *See, e.g.*, *Fields v. Suthers*, 984 P.2d 1167, 1170 (Colo. 1999). But "it is not available to compel the performance of a task that 'is discretionary or involves the exercise of judgment.'" *Owens v. Carlson*, 2022 CO 33, ¶ 21 (quoting *Bd. of Cnty. Comm'rs v. Cnty. Rd. Users Ass'n*, 11 P.3d 432, 437 (Colo. 2000)).

¶ 12    A plaintiff seeking relief under C.R.C.P. 106(a)(2) bears a demanding burden to satisfy a three-part test: (1) the plaintiff must have "a clear right" to the relief sought; (2) the defendant must have "a clear duty" to perform the act requested; and (3) there can be no other remedy available. *Owens*, ¶ 21 (citation omitted).

¶ 13    Because Lanari appears pro se, "we liberally construe his filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams*, 2019 COA 118, ¶ 8. We will not, however, rewrite his arguments or act as an advocate on his behalf. *See Johnson v. McGrath*, 2024 COA 5, ¶ 10.

### III.    DOC Properly Calculated the Cap on Lanari's Earned Time

¶ 14    Lanari first contends that, under the one-continuous-sentence rule, DOC should have calculated the 30% cap on earned time

6

based on his aggregate minimum sentence of sixty-four years[4] rather than on his twenty-four-year sentence for attempted murder. He claims that if DOC used the appropriate cap, he would have additional earned time that could affect his parole eligibility date. We are not persuaded.

¶ 15     The one-continuous-sentence rule governs Lanari's case: "[W]hen any inmate has been committed under several convictions with separate sentences, [DOC] shall construe all sentences as one continuous sentence." § 17-22.5-101, C.R.S. 2024.  Although the legislature did not define the phrase "one continuous sentence," the Colorado Supreme Court has addressed various methodologies that meet this requirement.  *See generally Owens*, ¶¶ 37-39; *Exec. Dir. of Colo. Dep't of Corr. v. Fetzer*, 2017 CO 77, ¶¶ 15-17.

¶ 16     One such approach is the "hybrid method of calculation" that DOC is required to use when an inmate has "consecutive sentences, at least one of which is subject to one calculation rule and at least one of which is subject to a different calculation rule."  *Owens*,

---

[4] This aggregate minimum sentence is the combination of Lanari's twenty-four-year sentence for attempted murder and the forty years he must serve on his life sentence to become eligible for parole.

¶ 44 n.5. Under this methodology, DOC "employ[s] a hybrid system that effectuates both of the calculation rules" by calculating the parole eligibility date for each sentence under the rule applicable to it and then "combin[ing] the resulting calculations to determine the parole eligibility date for [the defendant's] single continuous sentence." *Id.* at ¶ 44. "This system at once honors the two different calculation rules and the one-continuous-sentence requirement." *Id.*

¶ 17    Lanari's parole eligibility for the attempted murder sentence is governed by sections 17-22.5-401 to -407, C.R.S. 2024. *See* § 17-22.5-406(1)(a), C.R.S. 2024. He is therefore eligible to reduce this sentence by any earned time granted under section 17-22.5-405. But this earned time cannot reduce the length of the attempted murder sentence by more than 30%. *See* § 17-22.5-405(4)(a).

¶ 18    On the other hand, Lanari must serve "at least forty calendar years" of his life sentence for first degree murder before he can become eligible for parole. § 17-22.5-104(2)(c)(I). Sections 17-22.5-401 to -407 do not apply life sentences, § 17-22.5-402(3), C.R.S. 2024, so Lanari cannot receive earned time under section

8

17-22.5-405 for this sentence, and the 30% cap on earned time is inapplicable. Indeed, the "forty calendar years" Lanari must serve may "not be reduced by any type of credit." *People v. Goodwin*, 768 P.2d 715, 716 (Colo. App. 1988). *But see Fields*, 984 P.2d at 1172 (holding that the defendant was entitled to presentence confinement credit toward the parole eligibility date for his life sentence).

¶ 19 Thus, Lanari has two "consecutive sentences, . . . one of which is subject to one calculation rule and . . . one of which is subject to a different calculation rule." *Owens*, ¶ 44 n.5. This means that DOC was required to apply — and DOC did in fact apply — the hybrid method of calculation to determine Lanari's overall parole eligibility date by using section 17-22.5-405 (and other relevant provisions) to calculate the parole eligibility date for his twenty-four-year sentence for attempted murder and then combining the resulting calculation with the forty years that Lanari must serve on his life sentence. *See id.* at ¶ 44.

¶ 20 In contrast, Lanari's proposed method of calculation — calculating the 30% cap on earned time based on his sixty-four-year aggregate minimum sentence — violates section 17-22.5-104(2)(c)(I)

9

by applying credits to the "forty calendar years" that he must serve on his life sentence before becoming eligible for parole, *see Goodwin*, 768 P.2d at 716, and violates section 17-22.5-402(3) by applying section 17-22.5-405 to a sentence governed by section 17-22.5-104(2)(c)(I). *Cf. Owens*, ¶ 41.

¶ 21     Accordingly, DOC correctly calculated the 30% cap on earned time based on only Lanari's twenty-four-year sentence for attempted murder, and this calculation did not violate the one-continuous-sentence requirement. *See id.* at ¶ 44. Any additional earned time beyond this cap (apart from achievement earned time, which will be discussed below) cannot further reduce the time Lanari must serve before becoming eligible for parole. The district court thus properly dismissed this claim. *See id.* at ¶ 21; *Graham*, 227 P.3d at 518.

¶ 22     We are not persuaded otherwise by Lanari's contention that DOC is "using negative, retroactive application sentencing laws" to calculate his parole eligibility date. As we understand it, Lanari's argument is that the statute establishing the 30% cap, section 17-22.5-405(4)(a), should not apply to him because it "has an effective date of April 23, 2023," which is long after he received his

earned time. But that date refers to when an amendment to the statute came into effect, not to when the statute was originally enacted, and that amendment did not alter the existing 30% cap on earned time. *See* Ch. 66, sec. 1, § 17-22.5-405, 2023 Colo. Sess. Laws 234-35 (adding a provision granting nonviolent offenders earned release time if they receive a degree or certificate from a designated higher education institution).

¶ 23     The original version of section 17-22.5-405 was enacted and became effective in 1990. Ch. 120, sec. 19, § 17-22.5-405, 1990 Colo. Sess. Laws 952. As originally enacted, the statute included a provision stating that "[n]otwithstanding any other provision of this section, earned time may not reduce the sentence of any inmate . . . by a period of time which is more than twenty-five percent of the sentence." § 17-22.5-405(4), C.R.S. 1990. In 2009, section 17-22.5-405(4) was amended to increase the cap on earned time from 25% to 30%. Ch. 359, sec. 1, § 17-22.5-405, 2009 Colo. Sess. Laws 1867.

¶ 24     Thus, contrary to Lanari's contention, his attempted murder sentence has been subject to a cap on earned time since 1990 — long before he would have accumulated enough earned time to

reach that cap. Rather than being harmed by the retroactive application of statutory changes to his parole eligibility, Lanari is actually benefiting from a change that increased the cap on earned time.

### IV. Lanari Does Not Have a Clear Right to Achievement Earned Time

¶ 25    Lanari next contends that DOC failed to grant him "achievement earned time" to which he was entitled for completing therapeutic and educational programs and for exceptional conduct. We disagree.

### A. The Achievement Earned Time Statute and DOC's Regulation

¶ 26    In 2012, the Colorado General Assembly added subsection (9) to section 17-22.5-405. Ch. 213, sec. 2, § 17-22.5-405, 2012 Colo. Sess. Laws 916-17. That subsection currently provides, in relevant part, that

> an offender who successfully completes a milestone or phase of an educational, vocational, therapeutic, or reentry program, or who demonstrates exceptional conduct that promotes the safety of correctional staff, volunteers, contractors, or other persons under the supervision of the department of corrections, may be awarded as many as sixty days of achievement earned time per program milestone or phase or per instance of

> exceptional conduct, at the discretion of the
> executive director; except that an offender
> shall not be awarded more than one hundred
> twenty days of achievement earned time
> pursuant to this subsection.

§ 17-22.5-405(9)(a), C.R.S. 2024.  The provision specifies that "exceptional conduct" includes, as relevant to this appeal, "[s]aving or attempting to save the life of another person" and "[a]iding in the prevention of serious bodily injury or loss of life." § 17-22.5-405(9)(b)(I)-(II).  Earned time granted under section 17-22.5-405(9) is exempt from the 30% cap.  § 17-22.5-405(4)(a).

¶ 27    DOC set forth guidelines concerning the award of achievement earned time in DOC Admin. Reg. 550-12(IV)(D)(4) (effective Apr. 15, 2022).[5]  The regulation provides that achievement earned time may be awarded to "[o]ffenders who successfully complete a milestone or phase of an educational, vocational, therapeutic or reentry program" after 2012.  DOC Admin. Reg. 550-12(IV)(D)(4)(c).  An attachment to the regulation sets forth each program that is eligible for the award and the amount of achievement earned time that will be awarded for its completion.  DOC Admin. Reg. Form 550-12B.

---

[5] The regulation's number was changed in 2023 to DOC Admin. Reg. 625-02.

¶ 28    The regulation also provides that an offender may be awarded achievement earned time for exceptional conduct, as described in section 17-22.5-405(9)(b), if a DOC employee, contract worker, or volunteer submits an "Exceptional Conduct Nomination Form" on his behalf.  DOC Admin. Reg. 550-12(IV)(D)(4)(d)(1)-(4).  Similarly, a DOC employee, contract worker, or volunteer may submit a "Distinguished Actions Nomination Form" to recommend that an offender receive achievement earned time for "demonstrat[ing] exemplary leadership through mentoring, community service, and/or distinguished actions that benefit the health, safety, environment, and culture affecting staff and other offenders."  DOC Admin. Reg. 550-12(IV)(D)(4)(f).

## B.    Discussion

¶ 29    Lanari asserts that he is entitled to achievement earned time for (1) various programs he completed before 2012; (2) programs he completed after 2012; and (3) his "actions that helped to stop several offenders from suicide."  For two reasons, we conclude that the district court properly dismissed this claim.

¶ 30    First, mandamus under C.R.C.P. 106(a)(2) "is not available to compel the performance of a task that 'is discretionary or involves

14

the exercise of judgment.'" *Owens*, ¶ 21 (citation omitted).  DOC

has the discretion to "grant, withhold, withdraw, or restore . . . an

earned time deduction from the sentence imposed."

§ 17-22.5-405(3); *see Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875,

878 (Colo. App. 2003).  And achievement earned time is specifically

granted "at the discretion of [DOC's] executive director."

§ 17-22.5-405(9)(a).  Thus, Lanari "has no clear right to receive, and

[DOC] ha[s] no clear duty to grant," achievement earned time.

*Verrier*, 77 P.3d at 878.  Accordingly, Lanari is not entitled to

mandamus relief.

¶ 31     Second, the allegations in Lanari's complaint, taken as true,

do not demonstrate that he is entitled to achievement earned time

under DOC Admin. Reg. 550-12:

> (1)   Lanari's complaint alleges that he completed several
>
>       programs before 2012.  However, this predates the
>
>       legislature's creation of achievement earned time, and
>
>       DOC Admin. Reg. 550-12(IV)(D)(4)(c)(1)(a) specifies that
>
>       "[a]chievement time is only for programs completed after
>
>       August 2012."

(2)     Lanari's complaint also makes a conclusory allegation that he "continued to successfully complete educational and therapeutic programs in 2018, 2019, 2020, and 2021" without identifying any particular programs he completed. *See Scott v. Scott*, 2018 COA 25, ¶ 19 (Conclusory allegations "are not entitled to the assumption that they are true," and "Colorado courts have upheld dismissals because a complaint was conclusory in its allegations."). But in his response to DOC's motion to dismiss and in his appellate briefs, Lanari identifies three programs that he completed after 2012 — "Mental Health First Aid USA," "Offender Care Aid I," and a paralegal certificate program at Adams State University. Even if we were to consider these programs, they would not entitle Lanari to achievement earned time. "Mental Health First Aid USA" and "Offender Care Aid I" are not listed as programs eligible for achievement earned time in DOC Admin. Reg. Form 550-12B. And Lanari completed his paralegal certificate course in 2018, but

the award for certain college certificate programs did not become effective until May 2021.

(3) Finally, Lanari's complaint alleges that he is entitled to achievement earned time for his "actions toward aiding another offender." But the complaint also states that nobody filed any paperwork on his behalf. The regulation states that an "Exceptional Conduct Nomination Form" or a "Distinguished Actions Nomination Form" must be submitted for an offender to be eligible to receive achievement earned time for exceptional conduct or distinguished actions. DOC Admin. Reg. 550-12(IV)(D)(4)(d)(4), (f)(3).

¶ 32 For these reasons, the district court properly granted DOC's motion to dismiss. *See Owens*, ¶ 21; *Graham*, 227 P.3d at 518.

## V. Disposition

¶ 33 The judgment, including the orders dismissing the private prison officials and the claims against DOC under C.R.C.P. 12(b)(5), is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.

17