**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Adolph Quinten SHERROD, Defendant–Appellant.**

No. 03CA1105.

Colorado Court of Appeals, Div. VI.

July 26, 2007.

Rehearing Denied Aug. 23, 2007.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Keyonyu X O'Connell, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Adolph Quinten Sherrod, appeals the judgment of conviction that was entered on jury verdicts finding him guilty of third degree sexual assault, first degree assault, second degree assault, menacing, and child abuse. We reverse and remand for a new trial.

## I. Trial Court's Jurisdiction

Sherrod contends that he is entitled to a new trial because significant pretrial rulings were issued by a judge who lacked authority. We agree.

### A. Jurisdictional Error

In January 1999, the prosecution filed felony charges against Sherrod in El Paso County District Court. Although the case initially was handled by a district court judge, it eventually was assigned to a county court judge. From August 2000 to August 2001, the county court judge ruled on various pretrial matters.

In August 2001, the chief judge of the El Paso County District Court authorized the county court judge to sit as a district court judge in this case. *See* Colo. Const. art. VI, § 5(3)-(4). The chief judge's order stated that the appointment was "nunc pro tunc to October 20, *2001* " (emphasis added).

We agree with the People that the chief judge intended the appointment to be effective October 20, *2000*. However, we agree with Sherrod that the chief judge could not retroactively confer authority on the county court judge by entering the order

nunc pro tunc. A court may not enter a nunc pro tunc order to circumvent procedural rules or to cure a jurisdictional defect. *See Mark v. Mark*, 697 P.2d 799, 801 (Colo. App.1984); *Dill v. County Court*, 37 Colo. App. 75, 76–77, 541 P.2d 1272, 1273 (1975). We therefore conclude that the county court judge acquired the authority to act as a district court judge in August 2001.

It follows that the pretrial proceedings between August 2000 and August 2001 were conducted without jurisdiction. *See People v. Jachnik*, 116 P.3d 1276, 1277 (Colo.App.2005) ("[A]bsent a valid appointment order, a county court judge lacks jurisdiction to act as a district court judge and preside over any stage of a felony trial."). Therefore, the pertinent pretrial rulings are null and void. *See People v. Dillon*, 655 P.2d 841, 844 (Colo. 1982) ("It is axiomatic that any action taken by a court when it lacked jurisdiction is a nullity.").

### B. Remedy

Relying on *Merchants Mortgage & Trust Corp. v. Jenkins*, 659 P.2d 690 (Colo.1983); *People v. Jachnik, supra;* and *People v. Torkelson*, 971 P.2d 660 (Colo.App.1998), Sherrod argues that jurisdictional errors always warrant reversal, even in the absence of prejudice. We disagree with Sherrod's premise but agree that he is entitled to a new trial.

The cases on which Sherrod relies are alike: in each case, a jurisdictional defect nullified acts that may be regarded as essential to the judgment. In *Merchants Mortgage, supra*, 659 P.2d at 692, the supreme court vacated the judgment because a judge decided the merits of a civil suit after leaving office. In *Jachnik, supra*, 116 P.3d at 1277, a division of this court vacated the judgment because a judge apparently presided over the entire trial without proper authority. And in *Torkelson, supra*, 971 P.2d at 662, the judgment was reversed because the judge received the jury's verdict without proper authority. *See also People v. Torkelson*, 22 P.3d 560, 562 (Colo.App.2000).

Contrary to Sherrod's view, pretrial rulings are different from the acts at issue in *Merchants Mortgage, Jachnik*, and *Torkel-son*. Pretrial proceedings are not always essential. They are conducted largely for convenience and efficiency and may concern such minor matters as scheduling. Even when pretrial proceedings concern substantive matters, the resultant ruling may be changed during trial. *See Pearson v. Dist. Court*, 924 P.2d 512, 515 (Colo.1996) (law of the case doctrine did not deprive the trial court of the ability to reconsider pretrial rulings); *People v. Warren*, 55 P.3d 809, 813 (Colo.App.2002) (trial court may reconsider previous rulings to correct factual or legal errors).

■ Thus, a defective pretrial ruling will not always warrant reversal, even when the defect is jurisdictional. Reversal may or may not be necessary, depending on the nature of the ruling and its effect on the trial.

Here, the county court judge issued many pretrial rulings before acquiring the proper authority. A few of these rulings were of no consequence and may be disregarded. But other rulings were significant: (1) the judge allowed the prosecution to add charges; (2) he ordered that Sherrod be evaluated at the state hospital and, based on the resulting report, made a preliminary ruling that Sherrod was competent to stand trial; (3) he determined that two children were competent to testify; (4) he ruled on motions to admit evidence under CRE 404(b) and § 13–25–129, C.R.S.2006; and (5) he ruled on Sherrod's request for physical and psychological examinations of the victim.

The judge did not revisit his pretrial rulings after he acquired the proper authority, and these rulings had a substantial effect on the conduct and outcome of the trial. We therefore conclude that a new trial is necessary. *See Furfaro v. City of Seattle*, 97 Wash.App. 537, 984 P.2d 1055, 1058 (1999) (remanding for a new trial where the erroneous pretrial ruling "shaped the rest of the trial"), *aff'd on other grounds*, 144 Wash.2d 363, 27 P.3d 1160, *modified*, 36 P.3d 1005 (Wash.2001).

In reaching this conclusion, we are aware that it is often possible to remedy defects in pretrial proceedings by remanding for proper post-trial determinations. *See People v.*

*Kelling*, 151 P.3d 650, 656 (Colo.App.2006) (remanding for hearing on whether substitution of counsel was warranted); *People v. Beckstrom*, 843 P.2d 34, 37 (Colo.App.1992) (remanding for suppression rulings under correct standards). But we conclude that the pretrial rulings here are too numerous and substantial to admit of this solution. Some issues, such as the competency of child witnesses, would be difficult to determine retrospectively with any degree of reliability. *Cf. Drope v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975) (recognizing the "inherent difficulties" in retrospective determinations of competency to stand trial). Other rulings, such as the addition of charges, could not be revisited at all. *See People v. Johnson*, 644 P.2d 34, 37 (Colo.App. 1980) (post-trial amendment is allowed only as to form).

## II. Child Hearsay

We address one issue that is likely to arise on retrial.

Subject to certain limitations not applicable here, § 13–25–129 authorizes the admission of, among other things, "an out-of-court statement by a child ... *describing any act of child abuse, as defined in section 18–6–401*, C.R.S. [2006], to which the child declarant was subjected or which the child declarant witnessed." Section 13–25–129(1), C.R.S. 2006 (emphasis added).

Section 18–6–401(1)(a), C.R.S.2006, defines the crime of child abuse as follows:

A person commits child abuse if such person *causes an injury to a child's life or health*, or permits a child to be unreasonably placed in a situation that *poses a threat of injury to the child's life or health,* or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

(Emphasis added.)

Sherrod argues that acts of mental or emotional abuse cannot be evidenced by hearsay testimony under § 13–25–129 because this sort of harm does not constitute "an injury to a child's life or health" within the meaning of § 18–6–401(1)(a). We reject this argument.

Section 18–6–401(1)(a) contains no language that would accord the term "health" something other than its commonly understood meaning. We therefore interpret the term "health" to include both physical and mental well-being. *See Webster's Third New International Dictionary* 1043 (1986) ("health" means "the state of being sound in body or mind").

Given the natural relationship between one's physical and emotional well-being, Sherrod's position is untenable. *See* § 18–1–901(3)(c), C.R.S.2006 (" 'Bodily injury' means physical pain, illness, or any impairment of physical or mental condition."); *see also Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978) (allowing parties to recover for negligent infliction of emotional distress when that distress has manifested itself in some form of physical or mental illness).

The judgment is reversed, and the case is remanded for a new trial.

Judge DAILEY and Judge GRAHAM concur.