The PEOPLE of the State of Colorado, Petitioner

v.

Adolph Quinten SHERROD, Respondent.

No. 07SC812.

Supreme Court of Colorado, En Banc.

March 30, 2009.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Keyonyu X. O'Connell, Denver, Colorado, Barrett Weisz, Ridly, McGreevy & Weisz, P.C., Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. INTRODUCTION

We granted certiorari to review the court of appeals' published decision in *People v. Sherrod*, No. 03CA1105, 204 P.3d 472, 2007 WL 2128188 (July 26, 2007), in order to consider: (1) whether a county judge's pretrial rulings in a felony case were invalid where the record does not contain a written order authorizing the county judge to sit as a district judge but the chief judge issued an appointment order *nunc pro tunc*—or retroactively—after the rulings occurred; and (2) if the pretrial rulings were invalid, whether a new trial is required to correct the error.[1] A jury found the defendant, Adolph Quinten Sherrod, guilty of one count of third-degree sexual assault by force, one count of third-degree sexual assault by threat or intimidation, two counts of first-degree assault, two counts of second-degree assault, one count of menacing, and three counts of child abuse. Sherrod challenged his convictions on several grounds, arguing inter alia that the judge who presided over his trial and pretrial hearings did not have proper authority because he was a county judge without authority to preside over a felony case.[2] The court of appeals agreed with Sherrod's assertion that the chief judge's *nunc pro tunc* order was ineffective to retroactively confer authority on the county judge to act as a district judge during the pretrial hearings. It also concluded that Sherrod's convictions must be vacat-

---

1. We granted certiorari on the following two issues:
   1. Whether the court of appeals erred in finding that a chief judge's appointment of a county judge to be an acting district court judge *nunc pro tunc* constituted reversible error where the judge did not have the proper authority to oversee the case at the time of pretrial hearings, but subsequently acquired that authority by the time of trial.

2. Whether a defect in the trial court's authority to hear pretrial rulings can be remedied by remand for post-trial determination and re-entry of the pretrial rulings.

2. Although Sherrod appealed his conviction on several grounds, we only reach the issues discussed by the court of appeals below.

ed and a new trial conducted because the pretrial rulings were numerous and significant. The court of appeals did not reach the other issues raised by Sherrod.

On petition for certiorari, the People argue that the county judge was properly authorized to issue the pre-trial rulings or, if he did lack authority, that the error does not require reversal. Therefore, the People contend, the convictions should stand. We agree and reverse the court of appeals' decision. Accordingly, we remand the case to the court of appeals for consideration of the remaining issues on appeal.

## II. FACTS AND PROCEDURAL HISTORY

The People charged Adolph Quinten Sherrod with several crimes related to a prolonged episode of verbal and physical abuse he inflicted on his live-in girlfriend. Prior to August 31, 2000, District Judge Larry Schwartz presided over a handful of pretrial hearings relating to Sherrod's criminal trial. On August 31, 2000, County Judge Barney Iuppa replaced Judge Schwartz as the judge on Sherrod's pending case. Judge Iuppa presided over the remaining pretrial hearings and the subsequent trial. The record contains no documentation reflecting that Judge Iuppa had been appointed to act as a district judge prior to the pretrial hearings.

Judge Iuppa ruled on several issues during the pretrial hearings. In response to a motion by Sherrod, Judge Iuppa dismissed two counts of first-degree sexual assault and allowed the People to amend them to two counts of third-degree sexual assault, one by force and one by threat or intimidation. Judge Iuppa also ruled on the competency of the victim's children to testify as eyewitnesses and the admissibility of the children's hearsay evidence.

On August 22, 2001, Chief Judge Gilbert A. Martinez issued an order ("the nunc pro

tunc order") appointing Judge Iuppa to preside as an acting district judge in Sherrod's case pursuant to Chief Justice Directive 95–01–05(b). In order to correct the documentation missing from the record, Chief Judge Martinez issued this order nunc pro tunc,[3] retroactively delegating district court authority to Judge Iuppa as of October 20, 2000.[4] After the nunc pro tunc order, Judge Iuppa continued presiding over the case, and the jury trial began. On the first day of trial (approximately nine months after the nunc pro tunc order), Sherrod objected to Judge Iuppa hearing the trial and requested that it be heard by a district judge. Judge Iuppa denied the request. Sherrod did not object to Judge Iuppa's pretrial rulings.

During the trial, the prosecution presented witness testimony and other evidence against Sherrod, some of which Judge Iuppa had ruled admissible during the pretrial hearings. At the conclusion of the trial, the jury convicted Sherrod.

Sherrod challenged his convictions on appeal, arguing that because Judge Iuppa acted without authority prior to the appointment order, all of his earlier pretrial rulings were null and void, and this was reversible error requiring a new trial. The court of appeals agreed with Sherrod, finding that the chief judge's nunc pro tunc order did not retroactively cure the record's lack of an order appointing Judge Iuppa to preside over the pretrial hearings. Sherrod, at 473–74. Although acknowledging that post-trial reexaminations of pretrial rulings are generally sufficient to cure the problem, the court of appeals found that revisiting the rulings after the fact would be insufficient in the present case because the pretrial rulings were too numerous and significant. Id. at 474–75. We granted certiorari to review the court of appeals' decision and conclude that, because

---

3. Nunc pro tunc, literally meaning "now for then," is defined by Black's Law Dictionary as "[h]aving retroactive legal effect through a court's inherent power," Black's Law Dictionary 1100 (8th ed.2004), and such orders are used to correct minor irregularities in the record. People v. Mascarenas, 666 P.2d 101, 111 (Colo.1983).

4. The order appointing Judge Iuppa as acting district judge was "nunc pro tunc to October 20, 2001." However, the parties agree that this was a typographical error and the chief judge intended the order to be retroactive to October 20, 2000.

Judge Iuppa had proper authority to make the pretrial rulings, there was no error.

## III. ANALYSIS

There are two levels of trial court in Colorado: county courts and district courts. District courts are courts of general jurisdiction, having original jurisdiction over any and all cases, both civil and criminal, except for water cases. Colo. Const. art. VI, § 9. On the other hand, county courts are courts of limited jurisdiction; they have concurrent original jurisdiction with district courts over civil matters where the amount in dispute does not exceed fifteen thousand dollars and nonfelony criminal matters. Colo. Const. art. VI, § 17; § 13–6–104, C.R.S. (2008). The Colorado Constitution expressly states that county courts "shall not have jurisdiction of felonies." Colo. Const. art. VI, § 17. Jurisdiction over felonies thus falls to the district courts. *See* Colo. Const. art. VI, § 9.

However, although county courts lack jurisdiction over felonies, county judges can, in certain circumstances, be appointed to preside over matters in the district court. The chief justice of the supreme court may assign any county judge who has been licensed to practice law in Colorado for five years "to perform judicial duties in any district court." § 13–6–218, C.R.S. (2008); *see also* Colo. Const. art. VI, § 5(3); *People v. Torkelson,* 971 P.2d 660, 662 (Colo.App.1998). Furthermore, Chief Justice Directive 95–01 delegated this assignment power to the chief judges of each district. *See* Colo. Const. art. VI, § 5(4) ("Each chief judge shall have and exercise such administrative powers over all judges of all courts within his district as may be delegated to him by the chief justice."). Therefore, with the proper qualifications and assignment by the chief justice or a chief judge, a county judge may perform judicial duties in a district court.

This case arose and was tried in the Fourth Judicial District, which includes El Paso and Teller Counties. At the time, Barney Iuppa was an El Paso County Judge, and it is undisputed that he possessed the requisite qualifications to be appointed to act as a district judge under section 13–6–218. It is also well established that Judge Iuppa possessed the proper authority to preside over Sherrod's case by the time the trial began; Chief Judge Martinez issued the order designating Judge Iuppa as the acting district judge in Sherrod's case on August 22, 2001—before the trial started. Thus, we focus our inquiry on Judge Iuppa's pretrial rulings and conclude that they were valid.

### A. The Record's Lack of an Appointment Order Prior to the Pretrial Hearings Implicates Authority or Lack Thereof, Not Jurisdiction.

■ As a preliminary matter, we consider whether the present case raises a question of authority or jurisdiction. The court of appeals mistakenly characterized Judge Iuppa's pretrial rulings as being made without jurisdiction and cited two court of appeals' cases stating that a "court may not enter a *nunc pro tunc* order to . . . cure a jurisdictional defect." *People v. Sherrod,* at 474 (citing *Mark v. Mark,* 697 P.2d 799 (Colo.App.1984), *overruled by Robbins v. A.B. Goldberg,* 185 P.3d 794 (Colo.2008), and *Dill v. County Court,* 37 Colo.App. 75, 541 P.2d 1272 (1975)). We need not reach the question of whether *nunc pro tunc* orders can cure jurisdictional defects because the record's lack of documentation of Judge Iuppa's appointment was not a matter of jurisdiction.

Sherrod points to several cases to support his assertion that a defect in the appointment of a county judge is jurisdictional in nature. He first cites two of this court's cases, *Merchants Mortgage & Trust Corp. v. Jenkins,* 659 P.2d 690 (Colo.1983), and *Olmstead v. District Court,* 157 Colo. 326, 403 P.2d 442 (1965), where this court held that rulings made by judges acting without appointment authority were void. In both cases, the judges were former district judges who had completed their terms of office and attempted to rule on cases after their terms had expired. *Merchants Mortgage,* 659 P.2d at 691 (judge resigned as district judge after being appointed to the court of appeals); *Olmstead,* 157 Colo. at 328, 403 P.2d at 443 (judge's term of office had expired). However, both *Merchants Mortgage* and *Olmstead* discussed the validity of the former judges'

actions in terms of a lack of authority, not in terms of jurisdiction. *Merchants Mortgage,* 659 P.2d at 692; *Olmstead,* 157 Colo. at 329–30, 403 P.2d at 443. Thus, neither supports Sherrod's contention that a lack of appointment authority implicates jurisdiction.

Sherrod also cites the court of appeals' case of *People v. Jachnik,* 116 P.3d 1276 (Colo.App.2005), which stated, "absent a valid appointment order, a county court judge lacks jurisdiction to act as a district court judge." *Id.* at 1277. The People, in contrast, suggest that the court of appeals merely confused the word "jurisdiction" for "authority." We agree with that observation. In *People v. McMurtry,* 122 P.3d 237, 241 (Colo.2005), this court discussed the analytical confusion of the concepts of authority and jurisdiction, noting that, in a prior case, "[t]he word 'jurisdiction' ... meant the trial court's authority or lack thereof, and did not refer to the concept of subject matter jurisdiction." [5]

■ Today, we clarify that questions of a county judge's authorization to preside over matters in district court do not implicate jurisdiction. "Courts, not judges, are vested with jurisdiction." *Jachnik,* 116 P.3d at 1277. In Colorado, the district courts possess jurisdiction over felony charges; county courts do not. Colo. Const. art. VI, §§ 9, 17. Thus, felony cases tried in district courts are conducted with proper jurisdiction, and the question of whether a county judge was properly designated to preside over matters in the district court is a question of authority. The present case was filed and tried in the district court of the Fourth Judicial District. Because all parts of the trial, including the pretrial hearings, occurred in the district court, there was no defect in jurisdiction. As such, we now turn to the question of Judge Iuppa's authority to preside over Sherrod's pretrial hearings.

### B. The *Nunc Pro Tunc* Order was Sufficient to Retroactively Appoint Judge Iuppa as Acting District Judge.

■ We start the analysis of Judge Iuppa's authority by acknowledging that he pos-

sessed the requisite qualifications to be appointed to act as a district judge. Section 13–6–218 requires a county judge to have been licensed to practice law in Colorado for five years or more; Judge Iuppa has been licensed in Colorado since 1973 and became a county judge in 1995. Moreover, Judge Iuppa's authority is only questioned by the absence in the record of an appointment order predating Judge Iuppa's participation in the pretrial hearings.

As we discussed above, Sherrod compares the present case to two prior cases, *Merchants Mortgage* and *Olmstead,* where this court invalidated two former district judges' actions as having been made without authority. However, neither case supports the assertion that Judge Iuppa lacked authority. *Olmstead,* decided in 1965, involved a district judge whose term expired before he entered an order. 157 Colo. at 328, 403 P.2d at 443. Because he was no longer a judge, he attempted to enter the order *nunc pro tunc* to an earlier date during his term. *Id.* This court invalidated the purported order, stating, *"except as may otherwise be provided by law,* a judge's power to exercise judicial functions ceases with the expiration of his term of office." *Id.* at 330, 403 P.2d at 443 (citation omitted) (emphasis added). After the court's search revealed no statutory authorization permitting a retired or resigned judge to enter orders, it stated that the former judge "had no authority to enter any judicial order, *nunc pro tunc* or otherwise" as of the date his term ended. *Id.* Two years after *Olmstead,* however, article VI of the Colorado Constitution was amended to allow retired judges to be appointed to perform judicial duties. Ch. 455, art. VI, § 5(3), 1967 Colo. Sess. Laws Supp. 5–6. With the presence of article VI's constitutional authorization, *Olmstead* may have been decided differently today.

*Merchants Mortgage* took place after the article VI amendment; however, it is also distinguishable from the present case. In *Merchants Mortgage,* a district judge resigned his position after being appointed to

---

**5.** Although neither the court of appeals nor Sherrod expressly labeled the contested jurisdiction as subject matter jurisdiction, we note that the context compels this interpretation.

the court of appeals. 659 P.2d at 691. After his resignation, the former district judge entered findings of fact and a judgment in a case.[6] *Id.* Subsequently, the chief justice of the supreme court appointed the former district judge to hear and rule on certain upcoming post-trial motions. *Id.* Notably, the chief justice never authorized the former district judge to enter the findings of fact or judgment. Accordingly, this court held that "[s]ince the chief justice's order . . . was expressly limited to the post-trial motions[,] . . . it provide[d] no authority to support the judge's [earlier] actions." *Id.* at 692. This implies that, had the chief justice's order not expressly limited the appointment, the former district judge may have been properly authorized to enter the judgment.

Sherrod points to dicta within a footnote where this court stated, "Where, as here, action has been taken without prior authorization, and is challenged by a party to the litigation, we do not consider it appropriate to validate the action retroactively even if constitutionally permitted." *Merchants Mortgage,* 659 P.2d at 692 n. 4. Sherrod argues this sentence means that a judge's authority may never be retroactively designated. We disagree. We interpret this statement to mean that any authorization must come from the holder of the office designated in the constitution or statute—in *Merchants Mortgage's* case, the chief justice—and, as such, the court could not confer authority on a former judge where the chief justice expressly declined to do so. Thus, retroactive appointment by the holder of the appropriate office is a valid means to correct irregularities in the record.

■ The situation now before us, where an irregularity exists in an otherwise qualified county judge's authority to act as a district judge, is analogous to cases of de facto officers. "The de facto officer doctrine confers

validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States,* 515 U.S. 177, 180, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995); *see also McDowell v. United States,* 159 U.S. 596, 601–02, 16 S.Ct. 111, 40 L.Ed. 271 (1895) ("[T]he rule is well settled that where there is an office to be filled, and one, acting under color of authority, fills the office and discharges its duties, his actions are those of an officer de facto, and binding upon the public."). According to the United States Supreme Court,

> The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.

*Ryder,* 515 U.S. at 180, 115 S.Ct. 2031.

This doctrine has a long history in Colorado as well. In 1885, this court decided *Darrow v. People,* 8 Colo. 417, 8 P. 661 (1885). Darrow had been elected, by the majority of votes, to the office of alderman in the City of Denver. *Id.* at 418, 8 P. at 662. His official authority was later challenged, however, when it was revealed that he had not met a requirement of holding the office because he failed to pay taxes in Denver during the year prior to the election. *Id.* Instead of nullifying all of his actions since the election, this court decided that "the better doctrine is that if such a one [is otherwise qualified] and proceeds with the performance of the duties existing in connection therewith until the disability is adjudged by a proper tribunal, he is a de facto officer, and his acts performed in

---

**6.** At the time *Merchants Mortgage* was decided in 1983, article VI of the constitution allowed retired judges to act as district judges and section 13–3–111, added in 1981, allowed retired or resigned judges to be appointed to act as a district judge with the consent of the parties. Ch. 168, sec. 1, § 13–3–111, 1981 Colo. Sess. Laws 875. However, there was no statute specifically allowing court of appeals' judges to preside over district courts. This court dismissed the argument

that the constitution did not authorize the temporary assignment of the court of appeals' judge. *Merchants Mortgage & Trust Corp. v. Jenkins,* 659 P.2d 690, 692 n. 4 (Colo.1983). Furthermore, in 1990, the legislature enacted section 13–4–104.5, which specifically allows the chief justice to assign court of appeals judges "to temporarily perform judicial duties in any court of record." Ch. 179, sec. 2, § 13–4–104.5, 1990 Colo. Sess. Laws 1247; § 13–4–104.5, C.R.S. (2008).

**472**

the discharge of his official duties are valid and binding." *Id.* at 424, 8 P. at 666.

■ Similar to the de facto officer doctrine, we hold that where constitutional or statutory authorization exists to allow a judge—county, retired, or resigned—to perform certain judicial duties upon appointment and the judge is otherwise qualified under the constitutional or statutory authorization, actions taken by the judge under the color of authority are valid even if irregularities in the record later reveal a minor defect in the appointment. A *nunc pro tunc* order documents the legality of the judge's actions where the record is otherwise deficient. Although *nunc pro tunc* orders are not necessary to render such actions valid, we note such orders generally should be executed where irregularities in the documentation of a judge's authority are discovered.

In the present case, Judge Iuppa was otherwise qualified to act as a district judge and he acted under color of authority. Chief Judge Martinez was authorized to appoint a county judge in the Fourth Judicial District to serve as a district judge in the same district. The lack of an appointment order was a mere irregularity in the record—indeed, Sherrod's counsel admitted at oral argument that it was simply an "administrative task"—and no one contested Judge Iuppa's appointment as acting district judge during the pretrial hearings until after Sherrod's convictions. The record is unclear as to the exact circumstances surrounding Judge Iuppa's authority during the pretrial rulings; an appointment order may have been issued and misplaced, or Judge Iuppa's appointment may not have been recorded. We do not remand the case to develop the record, however, because it is unnecessary in this case; we reach the same conclusion whether we assume the *nunc pro tunc* order was the first written grant of authority or merely a corrective redundancy. Because Judge Iuppa was otherwise qualified and acting under the color of authority, his pretrial actions were valid despite the record's lack of a prior written appointment order, and the *nunc pro tunc* order effectively corrected the irregularity.

## IV. CONCLUSION

Sherrod's pretrial hearings took place in the district court, which possessed the proper jurisdiction over felony criminal matters. In addition, County Judge Iuppa was properly qualified to preside over the district court because he met the requirements of section 13–6–218 and was appointed to serve as a district judge by his chief judge. Thus, assuming that Judge Iuppa did not receive written authority before the pretrial hearings, the lack of an appointment order in the record did not invalidate his pretrial rulings. Chief Judge Martinez's *nunc pro tunc* order documented Judge Iuppa's authority. Accordingly, no error occurred. We therefore reverse the court of appeals' decision on the issues at bar and remand the case to the court of appeals to consider the remaining issues raised by Sherrod on appeal.