The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 12, 2026

## 2026COA8

**No. 25CA0087, *Lewis v. Stancil* — Criminal Law — Inmate and Parole Time Computation — One Continuous Sentence — Earned Time**

A division of the court of appeals examines the impact of a nunc pro tunc judgment of conviction on an inmate's earned time credits. In this case, the inmate sought mandamus relief requiring the Department of Corrections (DOC) to apply his earned time credits to his "one continuous sentence" — which he asserted comprised sentences from prior convictions for which he was incarcerated as of the nunc pro tunc date and the sentence from his later conviction that the court backdated — even though, after the effective date of the later conviction, the DOC applied the credits to discharge the prior convictions. The division holds that the DOC did not have a clear duty to apply the inmate's earned time credits when calculating the inmate's parole eligibility date in the later

case. The dissent concludes that the DOC was required to treat the inmate's discharged sentences as part of his one continuous sentence as of the nunc pro tunc date when calculating the inmate's parole eligibility date in the later case.

Court of Appeals No. 25CA0087
El Paso County District Court No. 24CV183
Honorable David A. Gilbert, Judge

Mark Lewis,

Plaintiff-Appellant,

v.

Moses Andre Stancil, the Executive Director of the Colorado Department of Corrections,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Berger*, J., concurs
Taubman*, J., dissents

Announced February 12, 2026

Mark Lewis, Pro Se

Philip J. Weiser, Attorney General, Katherine Fredericks, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Judges possess the power to turn back time through "[n]unc pro tunc" orders and judgments, which contain a retroactive effective date.  *Dill v. Cnty. Ct.*, 541 P.2d 1272, 1273 (Colo. App. 1975).  They have "retroactive legal effect through a court's inherent power."  *People v. Sherrod*, 204 P.3d 466, 468 n.3 (Colo. 2009) (quoting Black's Law Dictionary 1100 (8th ed. 2004)) (noting that "[n]unc pro tunc" literally means "now for then").

¶ 2     In this case, we address a novel issue regarding the effect of a nunc pro tunc judgment of conviction on an inmate's prior convictions.  Specifically, we examine the impact of such a judgment on the inmate's earned time credits that the Department of Corrections (DOC) applied to discharge the prior convictions between the nunc pro tunc date and the date on which the trial court signed the nunc pro tunc judgment.

¶ 3     Mark Lewis appeals the district court's entry of judgment against him in his mandamus action against the DOC through its Executive Director.  We affirm.

## I.     Background

¶ 4     In 2016, a jury convicted Lewis of first degree murder and tampering with physical evidence.  On January 28, 2016, the trial

1

court sentenced him to life without parole in the custody of the DOC on the first degree murder count and eighteen months on the tampering with physical evidence count, with the latter sentence to run concurrently with the former. At the time of sentencing, Lewis was serving sentences for several prior convictions. Those convictions had an effective sentence date of May 17, 2013.

¶ 5    Lewis appealed his conviction in the 2016 case. A division of this court reversed his first degree murder conviction and remanded for a new trial. *People v. Lewis*, (Colo. App. No. 17CA0219, May 21, 2020) (not published pursuant to C.A.R. 35(e)). (The appeal did not affect Lewis's conviction for tampering with physical evidence.)

¶ 6    On June 2, 2021, after the division reversed Lewis's first degree murder conviction, the DOC, through the parole board, discharged Lewis's previous sentences and the tampering with physical evidence sentence based on his accumulated earned time, and it released him to five years of mandatory parole as of April 5, 2021. The April date would have been Lewis's mandatory release date if he had not been serving the first degree murder sentence. Lewis remained incarcerated pending his new trial on the murder charge.

¶ 7     At Lewis's retrial in December 2021, a jury convicted him of second degree murder. The trial court sentenced Lewis to twenty-eight years in the custody of the DOC. The trial court entered the sentence nunc pro tunc to January 28, 2016 (the date Lewis was sentenced for first degree murder) and granted him credit for 319 days of time served.

¶ 8     Lewis is currently serving the twenty-eight-year second degree murder sentence and remains subject to the five-year parole term on the discharged sentences.

¶ 9     In his first claim for relief, Lewis sought a writ of mandamus to compel the DOC to recalculate his parole eligibility date (PED) under the "one continuous sentence rule" by considering his discharged sentences. In his second claim, he sought a writ of mandamus requiring the DOC to retroactively award him earned time for the time he served for the vacated first degree murder conviction.

¶ 10    The DOC moved to dismiss Lewis's case for failure to state claims upon which relief can be granted under C.R.C.P. 12(b)(5). The district court granted the motion because "Lewis failed to show a clear right to the inclusion of [the] discharged sentences in his

3

one continuous sentence and [PED] calculations and has no clear right to any award of earned time."

¶ 11    Lewis moved for reconsideration and filed an untimely response to the dismissal motion.  The district court stayed the dismissal order while it considered Lewis's untimely response to the motion to dismiss.  The district court also conducted a hearing on the motion to reconsider.  At the conclusion of the hearing, the district court denied the motion and, later that same day, issued an order upholding the dismissal of Lewis's claims.  (The record does not contain a transcript of the hearing.  The lack of a transcript would be fatal to Lewis's appeal if, at the hearing, the district court made findings of fact to support its ruling.  *See, e.g., Levin v. Anouna*, 990 P.2d 1136, 1139 (Colo. App. 1999) (holding that, because the plaintiffs failed to include the hearing transcript in the appellate court record, the court would presume the evidence supported the trial court's findings and conclusions at the hearing).  But because the hearing in this case concerned a motion to dismiss under C.R.C.P. 12(b)(5), and therefore did not involve resolution of disputed factual issues or findings of fact, we will consider Lewis's legal arguments on the merits despite the lack of a transcript.  *See*

4

*Griffis v. Branch Banking & Tr. Co.*, 602 S.E.2d 307, 311 (Ga. Ct. App. 2004) (holding that the lack of a hearing transcript did not impact the court's ability to review the appellant's arguments because "the hearing was not to receive evidence but was to hear argument of counsel").)

¶ 12    Lewis first contends that the DOC improperly calculated his second degree murder sentence and PED under the one continuous sentence rule. He argues that the DOC should calculate his one continuous sentence by construing the second degree murder sentence together with his sentences that were in effect on the nunc pro tunc date of January 28, 2016. If Lewis is correct, the length of his one continuous sentence would be thirty years, eight months, and eleven days, with a start date of May 17, 2013 — the sentencing date in his earliest case.

¶ 13    Second, Lewis contends that he is entitled to a retroactive application of earned time credits to the calculation of the second degree murder sentence, meaning that his PED should be February 16, 2035, and that the DOC should reduce his prison time by "several years."

¶ 14    Lewis asserts that, for these reasons, he pleaded claims on which relief can be granted, and the district court therefore erred by dismissing them.  We disagree.

## II.    The Law

### A.    Standard of Review

¶ 15    "We review de novo a district court's dismissal for failure to state a claim under C.R.C.P. 12(b)(5), and we apply the same standards as the district court."  *N.M. v. Trujillo*, 2017 CO 79, ¶ 18, 397 P.3d 370, 373; *accord Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo. 1996) ("In evaluating [a motion to dismiss under C.R.C.P. 12(b)(5)], trial courts and appellate courts apply the same standards.").  "Accordingly, we accept all allegations in the complaint as true, and we view them in the light most favorable to the [nonmoving] party."  *N.M.*, ¶ 18, 397 P.3d at 373.

¶ 16    "The purpose of a motion under C.R.C.P. 12(b)(5) to dismiss a complaint for failure to state a claim upon which relief can be granted is to test the formal sufficiency of the complaint."  *Dorman*, 914 P.2d at 911.

## B.     Mandamus Relief

¶ 17     "Mandamus is an extraordinary remedy which may be used to compel performance by public officials of a plain legal duty devolving upon them by virtue of their office or which the law enjoins as a duty resulting from the office." *State ex rel. Norton v. Bd. of Cnty. Comm'rs*, 897 P.2d 788, 791 (Colo. 1995) (quoting *Sherman v. City of Colo. Springs Plan. Comm'n*, 763 P.2d 292, 295 (Colo. 1988)).

¶ 18     "The power of the courts to order executive agencies to take any action is extremely limited." *Jones v. Colo. State Bd. of Chiropractic Exam'rs*, 874 P.2d 493, 494 (Colo. App. 1994).  Indeed, "[m]andamus lies to compel the performance of a purely ministerial duty involving no discretionary right and not requiring the exercise of judgment." *Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 877 (Colo. App. 2003) (quoting *Bd. of Cnty. Comm'rs v. Cnty. Rd. Users Ass'n*, 11 P.3d 432, 437 (Colo. 2000)).

¶ 19     A court will only grant mandamus relief if the plaintiff satisfies all three parts of the applicable test: (1) the "plaintiff must have a clear right to the relief sought"; (2) the "defendant must have a clear duty to perform the act requested"; and (3) "there must be no other

available remedy." *Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo. 1983). Divisions of this court have found a "clear right to the relief sought" when the challenged action was contrary to the plain language of a statute or regulation. *Id.*; *see, e.g., Gandy v. Raemisch*, 2017 COA 110, ¶ 29, 405 P.3d 480, 486 (concluding that mandamus relief was appropriate because the official's reading of the applicable regulation would have rendered certain language of the regulation superfluous); *Fetzer v. Exec. Dir. of Colo. Dep't of Corr.*, 2016 COA 7M, ¶ 35, 399 P.3d 742, 749 (holding that the appellant was entitled to mandamus relief because, under the applicable statute, the DOC "ha[d] a clear duty" to calculate the appellant's PED in the manner for which the appellant advocated), *aff'd in part and rev'd in part on other grounds*, 2017 CO 77, 396 P.3d 1108; *Asphalt Specialties, Co. v. City of Commerce City*, 218 P.3d 741, 746 (Colo. App. 2009) (deciding that the appellant was entitled to a writ of mandamus because the appellee's actions were contrary to the subject ordinance).

### C. The One Continuous Sentence Rule

¶ 20 "For purposes of administering a criminal convict's sentence, this jurisdiction has long required that his separate sentences be

construed as one continuous sentence." *Fetzer*, 2017 CO 77, ¶ 8, 396 P.3d at 1110. This principle is codified in section 17-22.5-101, C.R.S. 2025: "[W]hen any inmate has been committed under several convictions with separate sentences, the [DOC] shall construe all sentences as one continuous sentence."

¶ 21    The DOC interprets "sentence" in section 17-22.5-101 to mean only an active sentence with a prison component — an interpretation that the supreme court has determined is reasonable. *Diehl v. Weiser*, 2019 CO 70, ¶¶ 19-26, 444 P.3d 313, 318-19.

### III.    Analysis

### A.    Lewis Did Not Establish a Clear Right to a New PED

¶ 22    Lewis's first claim for relief fails, as a matter of law, because he does not have "a clear right to the relief sought." *Gramiger*, 660 P.2d at 1281.

¶ 23    Lewis argues that, because on January 28, 2016 — the nunc pro tunc date of his second degree murder sentence — he was still serving the sentences that were later discharged, the DOC must consider those sentences and the associated earned time credits when calculating his release date for the second degree murder conviction. Thus, Lewis asserts he is entitled to a writ of

9

mandamus requiring the DOC to recalculate his PED by applying the one continuous sentence rule to the discharged sentences and the second degree murder sentence. In other words, according to Lewis, because the discharged sentences had an effective sentence date of May 17, 2013, the DOC should calculate his PED from that date and not from the nunc pro tunc date of his second degree murder sentence. We disagree.

¶ 24    As a matter of law, when the DOC discharged Lewis's earlier sentences on June 2, 2021, and he became subject only to the parole term, the earlier sentences were "no longer operable in any sense." *People v. Luther*, 58 P.3d 1013, 1016 (Colo. 2002); *see* § 18-1.3-401(1)(a)(V)(D), C.R.S. 2025. For this reason, when the trial court sentenced Lewis for second degree murder six months later, that sentence was his one continuous sentence and he remained subject to the parole term. The nunc pro tunc order had no impact on Lewis's discharged sentences because it could not revive them. *See Diehl*, ¶¶ 19-26, 444 P.3d at 318-19.

¶ 25    No legal authority supports Lewis's contention that the one continuous sentence rule applies to sentences that were discharged before he was sentenced in his most recent case — even if the trial

court entered the latter sentence nunc pro tunc. More significantly, he does not cite any authority, and we are aware of none, establishing that because his parole term became effective after the nunc pro tunc date of the second degree murder sentence, the DOC had a *clear duty* to look to Lewis's discharged sentences to calculate his one continuous sentence. *See Gramiger*, 660 P.2d at 1281. To the contrary, section 18-1.3-401(1)(a)(V)(D); *Luther*, 58 P.3d at 1016; and *Diehl*, ¶¶ 19-26, 444 P.3d at 318-19, establish that, when the DOC discharged Lewis's earlier sentences and released Lewis to parole, the discharged sentences no longer had active prison components and, therefore, were of no consequence to the calculation of his one continuous sentence.

¶ 26 In sum, the DOC did not have a clear duty to apply the discharged sentences to the calculation of Lewis's second degree murder sentence, and, for that reason, Lewis did not state a claim for mandamus relief when he requested a new PED calculation. *See Gramiger*, 660 P.2d at 1281.

¶ 27 Accordingly, we conclude that Lewis has not shown a clear right to the PED calculation he requests. *See id.*

### B. Lewis Failed to Show a Clear Right to the Application of Earned Time Credits to the Calculation of His Second Degree Murder Sentence

¶ 28 Lewis contends that the DOC was required to apply his previously awarded earned time credits to his second degree murder sentence because the trial court made that sentence retroactive to January 28, 2016. We disagree.

¶ 29 Lewis was not entitled to mandamus relief compelling the DOC to apply his earned time credits when calculating his second degree murder sentence because the application of such credits is within the DOC's discretion. *See* § 17-22.5-405(1), C.R.S. 2025 ("Earned time, not to exceed ten days for each month of incarceration or parole, *may* be deducted from the inmate's sentence . . . ." (emphasis added)); *Renneke v. Kautzky*, 782 P.2d 343, 344-45 (Colo. 1989) (concluding that the General Assembly "granted the [DOC] discretion to withhold or deduct good time credits and to withhold, withdraw or restore earned time credits authorized to be awarded to inmates"); *People v. Frank*, 30 P.3d 664, 666 (Colo. App. 2000) (noting that "the granting of earned-time by the DOC is discretionary").

¶ 30    Moreover, Lewis does not explain how he could benefit from application of the earned time credits to his second degree murder sentence in light of the DOC's application of those very same credits to discharge his previous sentences in June 2021. Presumably, if Lewis prevailed on his mandamus claims, the discharge of his previous sentences would need to be reversed so the credits could be applied to the second degree murder conviction. But the record does not reveal how reapplying the credits in this manner would impact his previous sentences.

¶ 31    Accordingly, Lewis's earned time argument also fails. *See Verrier*, 77 P.3d at 878 (holding that the granting of earned time credit "lies in the discretion of the DOC, and [a] plaintiff has no clear right to receive, and [the DOC] ha[s] no clear duty to grant, earned time credit"); *see Gramiger*, 660 P.2d at 1281.

¶ 32    Because neither of Lewis's contentions stated a claim upon which relief can be granted, the district court properly dismissed them. *See Negron v. Golder*, 111 P.3d 538, 542 (Colo. App. 2004) ("A motion to dismiss is properly granted when the plaintiff's factual allegations cannot support a claim as a matter of law."); C.R.C.P. 12(b)(5).

## IV. Disposition

¶ 33    The judgment is affirmed.

JUDGE BERGER concurs.

JUDGE TAUBMAN dissents.

JUDGE TAUBMAN, dissenting.

¶ 34 Because of the technical application by defendant, the Colorado Department of Corrections through its Executive Director (the DOC), of its regulations for calculating an inmate's earned time, plaintiff, Mark Lewis, is being penalized for successfully appealing his first degree murder conviction, which after a new trial, resulted in his conviction for second degree murder. *Cf. People v. Johnson*, 2015 CO 70, ¶¶ 17-18, 363 P.3d 169, 176 ("[C]ourts may not 'put a price on an appeal.'" (quoting *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969))). Accordingly, he has been wrongly deprived of several years of earned time credits, even though the trial court in his second trial made his second degree murder sentence retroactive to the date of his first conviction with a nunc pro tunc designation so that Lewis could be credited with such earned time. Thus, in my view, the district court erred by dismissing Lewis's mandamus action, and I would reverse and remand that decision for further proceedings.

¶ 35 More specifically, as discussed below, I believe the district court erred by not applying (1) nunc pro tunc case law to Lewis's second degree murder sentence and (2) the rules for mandamus

15

relief to the circumstances presented here.  Because a nunc pro tunc order "is fully operative on the litigant's rights as of the prescribed effective date," *Law Offs. of Andrew L. Quiat, P.C. v. Ellithorpe*, 917 P.2d 300, 303 (Colo. App. 1995), I respectfully disagree with the majority's conclusion that the DOC lacked a clear duty to consider the nunc pro tunc sentence for Lewis as part of his one continuous sentence, § 17-22.5-101, C.R.S. 2025, and apply his previously awarded earned time credits to that sentence and to reduce his parole eligibility date (PED) by "several years."

## I.     Background

¶ 36     As a preliminary matter, I largely agree with the majority's recitation of the factual background.  Even so, I believe the following additional details warrant consideration.

¶ 37     On direct appeal, a division of this court reversed Lewis's first degree murder conviction, as the majority notes.  *People v. Lewis*, (Colo. App. No. 17CA0219, May 21, 2020) (not published pursuant to C.A.R. 35(e)).  The division reversed that conviction because the trial court erred by providing an initial aggressor instruction unsupported by the evidence.  *Id.,* slip op. at 7-18.

¶ 38    Further, Lewis alleged in his mandamus complaint, whose allegations we must accept as true, *see Peña v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 15, 463 P.3d 879, 882, that, while the direct appeal was pending, the DOC (pursuant to its policy) did not calculate either his "time on" the tampering with physical evidence sentence or his earned time credits for the life without parole sentence for first degree murder.  Indeed, the DOC could not do so because earned time credits may not accrue to a life without parole sentence.  DOC Admin. Reg. 625-02(IV)(C)(1)(d).  Lewis alleged that after the division reversed his first degree murder conviction, the DOC calculated his earned time and PED for his tampering with physical evidence sentence, as well as for the sentences from his previous convictions, resulting in the discharge of his prior sentences.

¶ 39    As the majority notes, the second trial resulted in the trial court imposing Lewis's sentence of twenty-eight years for second degree murder nunc pro tunc to January 28, 2016, the original sentence date.  However, in my view, additional facts in the record of Lewis's criminal case are relevant to his complaint and request for mandamus relief.  *See Norton v. Rocky Mountain Planned*

17

*Parenthood, Inc.*, 2018 CO 3, ¶ 7, 409 P.3d 331, 334 ("When considering a motion to dismiss for failure to state a claim, we may consider . . . matters proper for judicial notice."); *see also Walker v. Van Laningham*, 148 P.3d 391, 397 (Colo. App. 2006) ("[T]he general rule is that a court is permitted to take judicial notice of certain matters without converting a motion to dismiss to one for summary judgment.").

¶ 40    First, at the second trial, as noted, the jury convicted Lewis of second degree murder. Yet the jury also acquitted him of the charge of first degree murder. This suggests that at the first trial, but for the instructional error, the jury might well not have convicted Lewis of first degree murder, and he would not have received a sentence for life without parole in 2016.

¶ 41    Second, the pleadings following the sentencing at the second trial showed that the trial court amended the mittimus multiple times. The court did so because the DOC raised duplication concerns about Lewis's presentence confinement credits due to the nunc pro tunc provision. During this amendment process, the trial court stated in an order that it had issued the sentence nunc pro tunc to ensure that Lewis would receive good time or earned time

credits retroactive to the date of his original sentence. In pertinent part, the final amended mittimus (1) granted Lewis presentence confinement credit; (2) stated that his sentence of twenty-eight years for second degree murder ran concurrently to Lewis's prior sentences; and (3) was issued nunc pro tunc to the original sentence date.

## II. Nunc Pro Tunc Law

¶ 42    Lewis contends that the trial court's nunc pro tunc order from the second trial must be applied to credit him with earned time that he would have earned if he hadn't been wrongly convicted of first degree murder. I agree.

¶ 43    Nunc pro tunc ("Latin [for] 'now for then'") is defined as "[h]aving retroactive legal effect through a court's inherent power." Black's Law Dictionary 1283 (12th ed. 2024). Colorado's appellate cases have described two aspects of a nunc pro tunc order.

¶ 44    One aspect is to "ameliorate harm done to a party by court delays or clerical errors." *Guarantee Tr. Life Ins. Co. v. Est. of Casper*, 2018 CO 43, ¶ 27, 418 P.3d 1163, 1173; *see People v. Sherrod*, 204 P.3d 466, 468 n.3 (Colo. 2009). This means that a nunc pro tunc order "is *normally* made to correct an omission from

19

the court records." *People v. Mascarenas*, 666 P.2d 101, 111 (Colo. 1983) (emphasis added); *see In re Estate of Becker*, 32 P.3d 557, 559 (Colo. App. 2000) ("Court orders entered nunc pro tunc . . . are *normally* for the purpose of correcting an omission from the court records . . . ." (emphasis added)), *aff'd sub nom., In re Estate of DeWitt*, 54 P.3d 849 (Colo. 2002); *see also United States v. Carpenter*, 164 F. App'x 707, 709 (10th Cir. 2006) ("*Generally speaking*, such orders are reserved for situations where a clerical error in a judgment, order, or other part of a record requires correction." (emphasis added)). This aspect is clearly not at issue here because Lewis does not assert a clerical error or an omission from court records.

¶ 45 The second and broader aspect of nunc pro tunc orders, which applies here, provides that such orders are "given the same force and effect as if entered at the time the court's decision was originally rendered." *Dill v. Cnty. Ct.*, 541 P.2d 1272, 1273 (Colo. App. 1975); *see Stone v. Currigan*, 334 P.2d 740, 743 (Colo. 1959) ("Except as to the rights of third persons, a judgment nunc pro tunc is retrospective, and *has the same force and effect, to all intents and purposes*, as though it had been entered at the time when the

20

judgment was originally rendered." (emphasis added) (quoting 49 C.J.S. *Judgments* § 121 (1947))); 49 C.J.S. *Judgments* § 162, Westlaw (database updated Dec. 2025) (same); *Ellithorpe*, 917 P.2d at 303 ("[A] nunc pro tunc order operates retrospectively and generally is *fully operative on the litigant's rights as of the prescribed effective date . . . .*" (emphasis added)). This second aspect of nunc pro tunc case law enables courts to afford substantive relief to litigants in appropriate cases. *Cf. Perdew v. Perdew*, 64 P.2d 602, 604 (Colo. 1936) (holding that a nunc pro tunc order may be entered "where the cause was ripe for judgment and one could have been entered at the date to which it is to relate back, provided [any] failure is *not the fault of the moving party*" (emphasis added)).

¶ 46 The district court concluded that the DOC may disregard Lewis's prior sentences because they were discharged and could not be revived by the nunc pro tunc order. *See People v. Luther*, 58 P.3d 1013, 1016 (Colo. 2002); *Diehl v. Weiser*, 2019 CO 70, ¶¶ 19-26, 444 P.3d 313, 318-19. I agree that a nunc pro tunc order in one case has no impact on the operability of sentences issued in other cases.

¶ 47    However, I respectfully disagree that the discharge of Lewis's prior sentences is relevant to the retrospective effect of the nunc pro tunc sentence for second degree murder. *Cf. Robbins v. Goldberg*, 185 P.3d 794, 797 (Colo. 2008) (holding that, where a court mistakenly did not enter judgment properly, the appropriate remedy was a nunc pro tunc judgment). Rather, we must give the nunc pro tunc sentence "the same force and effect *as if* entered" on the original sentence date. *Dill*, 541 P.2d at 1273 (emphasis added). That means treating the sentence "as if" it were entered concurrently with the prior sentences when they were active. *Id.* Conceiving of Lewis's prior sentences *as if* they were active in 2016 for purposes of the nunc pro tunc sentence does not require reversing the discharge of those prior sentences. Rather, the DOC should determine how the credits would have been applied with the nunc pro tunc sentence as part of Lewis's *one continuous sentence*, rather than recreating past events in a way that attempts to reinstate each prior sentence. *Cf. United States v. Daniels*, 902 F.2d 1238, 1240 (7th Cir. 1990) (holding that a nunc pro tunc order may not rewrite history).

22

¶ 48    It follows that the nunc pro tunc sentence must be treated as running concurrently with the prior sentences still in effect in 2016. Thus viewed, the DOC is then obligated to address the nunc pro tunc sentence as part of one continuous sentence as of the date of the prior sentences. *See* § 17-22.5-101. Accordingly, this one continuous sentence that includes the nunc pro tunc sentence of twenty-eight years must receive the PED and earned time credits computations that the DOC had *already applied* to Lewis's prior sentences. *See Diehl,* ¶ 15, 444 P.3d at 318.

¶ 49    I conclude that these details sufficiently established that the mittimus required the DOC to treat the nunc pro tunc sentence the same as the prior sentences, meaning as though it had been issued concurrently with the prior sentences. *See Meredith v. Zavaras*, 954 P.2d 597, 603 (Colo. 1998) (To "permit the DOC to decline to comply with [district court orders] . . . would undermine the power of the judicial system to interpret the laws and impose criminal sentences."); *see also People v. Pate*, 878 P.2d 685, 694 (Colo. 1994) ("It is axiomatic that the judiciary has the exclusive power to impose sentences which fall within the limits determined by the General Assembly.").

### III.  Mandamus Relief

¶ 50    In my view, the district court erred by concluding that Lewis was not entitled to mandamus relief.

¶ 51    Mandamus only applies here if Lewis has a clear right to relief, the DOC has a clear duty to perform, and Lewis has no other available remedy.  *See Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo. 1983).

#### A.    Clear Right to Relief and Duty to Perform

¶ 52    Despite multiple amendments, the mittimus consistently stated that the nunc pro tunc sentence of twenty-eight years must run concurrently with the prior sentences.  The trial court further stated that the inclusion of the nunc pro tunc provision on the mittimus was intended to *ensure* that the DOC would entitle Lewis to good or earned time credits retroactively to the date of his original sentence.  Also, the DOC was aware of the nunc pro tunc provision's retrospective effect given that it raised concerns several times about the nunc pro tunc provision's impact on Lewis's presentence confinement credits.

¶ 53    In this mandamus action, Lewis requested that the district court compel the DOC to adhere to computations it had already

24

made and entered in his prior sentences.  Thus, he has a clear right for the DOC to treat his nunc pro tunc sentence as part of one continuous sentence pursuant to the trial court's nunc pro tunc order for purposes of earned time and PED calculations for the reasons already discussed.  *See Vaughn v. Gunter*, 820 P.2d 659, 662 (Colo. 1991) (holding that section 17-22.5-101 mandates that the DOC "construe all sentences imposed on an inmate as one continuous sentence"); *see also Fetzer v. Exec. Dir. of Colo. Dep't of Corr.*, 2016 COA 7M, ¶ 35, 399 P.3d 742, 749 ("[S]ection 17-22.5-101 imposes on DOC a duty to calculate the correct PED for inmates."), *aff'd in part and rev'd in part on other grounds*, 2017 CO 77, ¶ 21, 396 P.3d 1108, 1114.

¶ 54     For these same reasons, the DOC had an obligation under the trial court's order to adhere to the one continuous sentence statute. § 17-22.5-101; *see Gramiger*, 660 P.2d at 1281.  In this case, such adherence amounts to a ministerial function — not a discretionary act — applying already computed earned time credits to the nunc pro tunc sentence.  *See Gramiger*, 660 P.2d at 1281.

¶ 55     Further, the DOC had no discretion to withdraw Lewis's earned time credits because they had vested under section

17-22.5-405(3), C.R.S. 2025 (stating that earned time deduction resulting from an annual review "shall vest upon being granted"). The DOC applied Lewis's earned time credits when discharging his prior sentences. By applying earned time credits to the prior sentences, which are part of Lewis's one continuous sentence for the reasons stated above, those earned time credits necessarily vested. Thus, Lewis has a clear right to have the credits also apply to his nunc pro tunc sentence of twenty-eight years. *See* §§ 17-22.5-101, -405(3); *see also Ankeney v. Raemisch*, 2015 CO 14, ¶ 20, 344 P.3d 847, 854 (holding that reductions specified in section 17-22.5-405 automatically reduce the term imposed on an offender).

¶ 56     In my opinion, the unique circumstances presented here, viewed in the light most favorable to Lewis, establish that Lewis has a clear right to relief, and the DOC has a clear duty to apply the PED and earned time credits calculations that Lewis seeks. *See Gramiger*, 660 P.2d at 1281.

### B.     No Other Remedies Available

¶ 57     Last, no other remedies are available to Lewis, and the DOC has not suggested any that could apply. *See id.* Indeed, if the error

in the first trial had not occurred, Lewis may well have been convicted of second degree murder, and without a sentence to life without parole, he would have received the PED computation and earned time credits already applied to his previous sentences. Precluding him from having the opportunity to pursue such relief essentially amounts to penalizing him for successfully appealing his first degree murder conviction. *See Johnson*, ¶¶ 17-18, 363 P.3d at 176.

¶ 58    While the barrier to providing mandamus relief is high, it is not insurmountable. Although mandamus relief is infrequently granted, it has been deemed appropriate when a sentence calculation by the DOC contradicts the one continuous sentence statute. *See Fetzer*, ¶¶ 29-36, 399 P.3d at 748-49 (holding that the inmate had a clear right to mandamus relief when the DOC improperly construed the one continuous sentence statute to calculate the inmate's PED); *Fields v. Suthers*, 984 P.2d 1167, 1173 (Colo. 1999) (finding that mandamus relief was appropriate and that the DOC had a duty to correctly calculate the inmate's PED). Thus, it is also appropriate here.

## IV. Conclusion

¶ 59 Accordingly, I believe nunc pro tunc law must be applied to Lewis's twenty-eight-year sentence and that he is entitled to mandamus relief. *See Fields*, 984 P.2d at 1173. I thus conclude that Lewis has stated plausible grounds for relief and would reverse the judgment of the district court and remand for further proceedings.